## KENNETH DENNISON v. STATE.

No. A-4242.    Opinion Filed Nov. 17, 1923.

(219 Pac. 957.)

(Syllabus.)

1. **Rape—Evidence Sustaining Conviction for Assault with Intent to Commit Rape.** In a prosecution for assault with intent to commit rape, evidence examined and held sufficient to sustain the verdict and judgment.

2. **Same—In Assault on Female Under Age of Consent—Proof of Nonconsent Unnecessary.** In a prosecution for an assault upon a female under the statutory age of consent with intent to

commit rape, it is not necessary to prove that the acts were done against her will. Whether she consented, submitted, or resisted is wholly immaterial.

3.  **Appeal and Error—Harmless Error—Instructions in Prosecution for Assault with Intent to Commit Statutory Rape.** In a prosecution for assault to commit rape, the trial court necessarily had to define the crime of rape as applied to the facts in the case, and, although it was unnecessary for the court to state in such instructions the punishment applicable to certain degrees of rape, such error did not prejudice the defendant.

4.  **Appeal and Error—Necessity for Showing Prejudicial Error—Instructions.** This court is not authorized to reverse a judgment of conviction because of erroneous instructions unless, after an examination of the entire record, it appears that the error complained of probably resulted in a miscarriage of justice, or else constitutes a substantial violation of the constitutional or statutory right of the defendant.

Appeal from District Court, Woods County; Arthur G. Sutton, Judge.

Kenneth Dennison was convicted of assault with intent to commit rape, and he appeals. Affirmed.

This is an appeal from a judgment rendered in the district court of Woods county on the 13th of October, 1923, in accordance with a verdict finding the plaintiff in error (hereinafter referred to as defendant) guilty of the crime of assault with intent to commit rape and fixing his punishment as above stated.

The information charged the offense to have been committed on one Agnes Mitchell on or about the 26th day of June, 1921. Agnes Mitchell at that time was a girl about 16 years of age and had been attending the Alva high school. The defendant at the time of the commission of the alleged offense was about 18 years and 6 months old. The defendant and prosecutrix were not acquainted with each other prior to the occasion of their meeting on June 26, 1921, and had never been in company with each other.

On the evening of June 26, 1921, which was Sunday, Agnes Mitchell, Frances Shaw, and Etta Gibson, whose respective ages were 16, 15 and 15, and who were friends to each other and students in the Alva high school, went together to attend certain Chautauqua exercises which were then being conducted in the city of Alva. There had been a slight rain that afternoon, and after having gone to the Chautauqua entertainment, because of the threatening of rain, these three girls concluded that they would return to their respective homes before the entertainment was over. They started on their journey homeward, walking together, when they were overtaken by the defendant Kenneth Dennison, Lee Schultz, and Mortimer Welsh, who were all riding in a Ford car belonging to the defendant and driven by him. It appears that Lee Schultz lived near the prosecutrix and was acquainted with her and the other girls, as was also Mortimer Welsh; that the defendant was acquainted only with Etta Gibson. They asked the girls to take a ride with them, but the girls refused to go. Whereupon the boys drove to the public square in the city of Alva, and there Lee Schultz alighted from the car, after which Dennison and Welsh again accosted the girls to take a ride with them, and Etta Gibson said that she had to go home, and according to the testimony of the prosecutrix and that of Frances Shaw they each stated that they wanted to go home. Whereupon the boys said get into the car and they would take them home. The girls got into the automobile, and at the request of Etta Gibson the boys drove around the public square a couple of times and then took Etta Gibson home, where she got out of the car. Instead of taking Agnes Mitchell and Frances Shaw home, Dennison drove out west of Alva to a park known as Hatfield's Park; the prosecutrix contending that she protested and requested the defendant to take her home, as did also Frances Shaw. Then they drove into the

park. According to the state's witnesses, Dennison promised to turn around in the park and take them back home, but instead of doing so he drove down into the park, turned his car around, stopped the engine, turned out the lights, and then began an assault upon the person of the prosecutrix, Agnes Mitchell, who was sitting in the right side of the front seat with him. About the same time Mortimer Welsh began to act familiar with Frances Shaw, who was sitting in the rear seat with him, and the Shaw girl jumped out of the rear seat, stating that she was going to walk back to Alva, and Welsh jumped out behind her and walked up to her and persuaded her not to walk back to Alva. This consumed at least five minutes of time. The Shaw girl and Welsh then returned to the car, where they had left the defendant and Agnes Mitchell, and according to the testimony of the Shaw girl the defendant was over on top of the Mitchell girl and the Mitchell girl was asking for help and endeavoring to prevent the defendant taking liberties with her. The Shaw girl then requested the Welsh boy to help the prosecutrix, but Welsh refused, stating that he did not see that she needed any help or that the defendant was doing anything that required interference by him. Whereupon the Shaw girl started to another car which was parked out there some 30 or 50 yards distant, and Welsh immediately followed her. In a short time the Mitchell girl came running over to this other car; her hair was disheveled, her clothes torn, and shortly after reaching the car she fainted. The defendant also shortly thereafter came over to the other car, and the Shaw and Mitchell girls (after she had been revived) requested the young men who were in the other car to drive them back to their homes, which was done. When the Mitchell girl reached home, she was nervous, excited, and crying, with the left sleeve of her dress torn nearly out and the dress unbuttoned behind. She immediately made complaint to her mother

and stepfather, who were then at home. Her stepfather was a commercial traveler and had to leave on his trip in about 30 minutes after the girl reached home and did not return until about a week later, after which time these proceedings were instituted against this defendant.

The testimony of the prosecuting witness is amply sufficient to sustain the verdict and judgment, corroborated as it is by that of all of the disinterested witnesses in the case.

The defendant took the witness stand in his own behalf and introduced also his companion on that trip, Mortimer Welsh, as a witness. The theory of the defendant was that the Mitchell and Shaw girls were both willing to take a joy ride on that occasion, and that they had hardly got outside of the limits of the city of Alva when they began to love and caress these young men, and that they merely returned the affections bestowed so willingly upon them, and that the defendant had no intention of committing a rape upon the prosecuting witness, and that he only hugged and kissed her and "petted her," as was customary on such occasions within the confines of Hatfield's Park. The admitted conduct of the prosecuting witness and of the Shaw girl brand as likely fabrications the testimony of both Welsh and the defendant.

C. H. Mauntel, for plaintiff in error.

George F. Short, Atty Gen., and John Barry, Asst. Atty. Gen., for the State.

MATSON, P. J. (after stating the facts as above). It is insisted that the evidence is insufficient to sustain the verdict and judgment; that at most it merely indicates that the prosecutrix was at all times willing to go to Hatfield's Park; that she made no objection to going there; that she was anxious and willing to be "petted" by the defendant in the

car; that she did not begin to struggle or complain that the defendant was trying to use improper means or to employ improper methods toward her until she was discovered in a compromising position by Frances Shaw and Mortimer Welsh when they returned to the car.

While the testimony of the defendant and of Welsh might support such theory, the testimony of the other witnesses substantially contradicts any such position and indicates clearly that the defendant assaulted the prosecuting witness with improper motives and with intent to have intercourse with her willingly if she would submit and otherwise if she would not submit. The evidence in this case discloses that the prosecutrix was of the age of 16, of previous chaste and virtuous character, and that the defendant was at that time over the age of 18 years. It would be immaterial, therefore, whether the prosecutrix resisted or not if the defendant took such liberties with her that clearly indicated an intention upon his part to have sexual intercourse with her. Lee v. State, 7 Okla. Cr. 141, 122 Pac. 1111.

We do not mean to say, however, that the evidence in this record indicates without contradiction that the prosecutrix was a willing subject, or that there is no substantial evidence that the defendant used force upon her against her will and resistance. In fact, the more credible evidence is to the effect that the defendant assaulted the prosecutrix against her will, that she resisted his attacks, and that his intention was to accomplish an act of sexual intercourse with her by means of force, and we consider the evidence amply sufficient to sustain the judgment and decline to disturb the finding of the jury upon the ground of the insufficiency of the evidence.

It is next contended that the trial court erred in defining certain degrees of rape and stating the punishment im-

posed for such grades of rape in the instructions to the jury. In this connection it is contended that such instruction, while technically correct, had no bearing whatever on the case. We cannot altogether agree with this contention. Perhaps it was unnecessary for the court to state the punishment applicable to certain degrees of rape, but that did not necessarily injure the defendant in the trial of this case. Necessarily, in order to determine whether or not the defendant intended to commit the crime of rape upon the prosecutrix, the trial court had to instruct the jury just what the crime of rape was as applied to the facts in this case, and an examination of the definitions of rape as given discloses that the instructions defining rape were applicable to the facts of the case. We find, therefore, no error in the instructions sufficient to authorize a reversal of the judgment upon this ground.

After the jury had retired to consider of their verdict, they were returned into open court and in the presence of the defendant the following proceedings were had:

"By the Court: Have you agreed on a verdict, gentlemen?

"By the Foreman: No, sir; we have not. We would like some instructions.

"By the Court: All right, what is it?

"By the Foreman: If the court please, we would like to know if we could be permitted by law, if we find this defendant guilty—have we got the right to send him to the reform school instead of the penitentiary?

"By the Court: Under an executive order of the Governor no person under the age of 25 who has committed his first crime shall be sent to the penitentiary, but every such person must be sent to the reform school, and even though you should fix the penalty in the penitentiary the court would be required under the executive order, to send him to the reform school instead of the penitentiary. So in the event you

find the facts to be such that you fix the penalty, you may fix it in the reform school instead of the penitentiary, if you so desire; but even if you fix it in the penitentiary, as I stated, the court will be required to send him to the reform school because of his first offense. Anything further, gentlemen?

"By the Foreman: I believe that is all.

"By the Court: Very well, you may retire.

"By Mauntel: To all of which remarks of the court the defendant objects and excepts."

Thereupon the jury retired in charge of their bailiff and thereafter returned a verdict finding the defendant guilty as charged and fixing his punishment at one year and one day in the reformatory.

Counsel for defendant in arguing this assignment of error has the following to say:

"The jury doubtless did denounce the practice of these young people, they doubtless felt that some punishment should be meted out, and the court misdirected the jury by telling them that the defendant instead of going to the penitentiary or reformitory at Granite should be sent and would be sent to a reform school, such as this state maintains at Pauls Valley; and it was upon this instruction that the jury finally agreed to find the defendant guilty and fixed the penalty at one year and one day in the reformatory. This instruction, taken in conjunction with instruction No. 3, had the exact effect of convicting this defendant for acts which do not constitute a crime against the laws of this state, but which are reprehensible probably from a moral standpoint, but are not denounced by the criminal laws of this state."

With reference to the punishment to be assessed for the crime charged, the court in the general charge to the jury gave the following instruction:

"No. 4. Any person who is guilty of an assault with intent to commit any felony, except an assault with intent to

kill, is punishable by imprisonment in the state penitentiary not exceeding five years, or in a county jail not exceeding one year, or by a fine not exceeding $500, or by both such fine and imprisonment.''

No objection was made or exception taken to the latter instruction. It appears from such instruction that the jury were told that if a punishment exceeding one year were to be imposed, the place of imprisonment of necessity should be in the state penitentiary; if less than one year, in the county jail; or if a less punishment than that were imposed, then a fine not exceeding $500, and in addition the jury were told that they might impose both a fine and imprisonment in the county jail. The verdict of the jury clearly indicates, considering the instructions together, that they intended to impose a higher punishment than by imprisonment in the county jail or else they would not have fixed the term of imprisonment at one year and one day. They were evidently not misled by the use of the words ''reform school.'' There is no penal institution in this state known as a ''reform school.'' There is a state training school for juvenile offenders between the ages of 10 and 16 years located at Pauls Valley. The defendant being over the age of 18 years would not be subject to admission under any circumstances to that institution. To say that the jury would not have found him guilty had they not believed they could send him to such institution seems wholly without merit when, under the court's instructions, the jury were at liberty to impose only a fine upon the defendant without imprisonment at all, and yet the jury refused to assess only a fine as punishment or even a small term in the county jail which they had liberty to do under the court's instruction. We think it is a fair inference from the verdict and all the instructions given that the jury was not misled by the reference made to a ''reform school.'' The jury fixed the place

of imprisonment not in the "reform school," but in the reformatory, and the state has such an institution located at Granite, Okla., and the judgment of the court conformed with the verdict and fixed that place as the place of imprisonment under the verdict. This assignment of error in our opinion is clearly speculative, and to reverse a judgment of conviction and remand the cause in the face of the facts would, as we view it, do violence to that provision of our Code which requires this court not to set aside a judgment on the ground (among others) of the misdirection of the jury unless it appears in the opinion of this court that the error complained of has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right.

The defendant had no right in the first instance to demand that he be imprisoned in the state training school for juvenile offenders. Upon conviction he could only be imprisoned in the reformatory at Granite or in the county jail or else punished by fine. The jury had the opportunity to imprison him in the county jail or by fine and refused to do so.

Careful and painstaking consideration of the record convinces the court that the defendant had a fair and impartial trial, and that he was ably defended in the lower court, and that no error occurred prejudicial to his substantial rights.

For reasons stated, the judgment is affirmed.

BESSEY and DOYLE, JJ., concur.