THE STATE OF KANSAS v. CHARLES W. ARNOLD.

No. 16,167.   (100 Pac. 64.)

SYLLABUS BY THE COURT.

CRIMINAL LAW—*Insanity*—*Homicide.* The law recognizes every
. form of insanity or delusion which renders an accused men-
tally incapable of knowing the nature and quality of an act
he is doing, and that what he is doing is wrong, as relieving
him of criminal responsibility for the act; but no delusion or
mental weakness which falls short of rendering the mind in-
capable of such discernment obviates the criminal character
of and penalty for the act.

Error from Sumner district court; CARROLL L.
SWARTS, judge.   Opinion filed February 6, 1909.   Af-
firmed.

. *Fred S. Jackson,* attorney-general, and *James T.
Herrick,* county attorney, for The State.

*John W. Adams,* and *George W. Adams,* for appel-
lant.

The opinion of the court was delivered by

SMITH, J.:  The appellant, Charles W. Arnold, was
arrested on the charge of murder in the first degree,
and was tried and convicted of murder in that degree.
On his appeal here numerous assignments of error are
made, but only alleged errors in the instructions are
urged in the brief on his behalf.   The fact of the homi-
cide was admitted, the only controverted question of
fact being the sanity of the defendant.   With twenty-
two other general instructions, the court gave an in-
struction on the question of insanity which the appel-
lant claims is wholly and entirely erroneous.   It reads:

"(15) If the defendant, Charles W. Arnold, shot and
killed the said Timothy Riggs at the time and place
and with a revolver as charged in the information, and
if at the time he did so he was laboring under such a
defect of reason from disease of the mind as not to
know the nature and quality of the act he was doing,

or, if he did know it, that he did not know that what he was doing was wrong, then the law does not hold him responsible for his act. On the other hand, if he was capable of understanding what he was doing, and had the power to know that his act was wrong, then the law will hold him criminally responsible for it. If this power of discrimination existed he was sane, or, in other words, a person of sound memory and discretion, and will not be exempt from punishment because he might have been a person of weak intellect or one whose moral perceptions were blunted or ill developed, or because his mind may have been depressed or distracted from brooding over misfortunes or disappointments, or because he may have been wrought up to the most intense mental excitement from sentiments of disappoinment, revenge or anger. The law recognizes no form of insanity, although the mental faculties may be disordered or deranged, which will furnish one immunity from punishment for an act declared by law to be criminal, so long as the person committing the act had the capacity to know what he was doing and the power to know that his act was wrong.

"It devolves upon the state to prove to your satisfaction, beyond a reasonable doubt, the defendant's sanity, as above defined, at the time of the shooting. If you believe from all the evidence in the case, beyond a reasonable doubt, that the defendant at the time and place, and in the manner charged in the information, shot and killed Timothy Riggs, and if you should fail to find from all the evidence in the case, beyond a reasonable doubt, that the defendant at the time of such shooting and killing was sane, as above defined, then you must acquit the defendant."

The appellant prepared and requested the court to give in addition thereto the following instructions relating to the same subject, which the court refused:

"(3) The law recognizes partial as well as general insanity; that a person may be insane upon one or more subjects and sane as to others; that he may be laboring under a mental delusion upon some particular matter or regarding a particular person and generally sane upon all other subjects. As regards the guilt or innocence of the defendant, it makes no difference whether the act charged was produced by general insanity or by mental delusions regarding some particular subject

or person; and, unless you believe from the whole of the evidence, beyond a reasonable doubt, that the defendant at the time of the alleged offense was not laboring under a mental delusion and that the act of shooting and killing Riggs was not the product of such delusion, and that he did know and realize that he was doing wrong or committing a crime, you should not convict the defendant of the crime charged or any other offense included in the charge. In order to warrant the conviction of the defendant, you must be satisfied from the evidence, beyond a reasonable doubt, that his act in shooting and killing Riggs was not the result of either general or partial insanity as above stated.

"(4) The jury are instructed that, before they can convict the defendant, they must believe from the evidence, beyond a reasonable doubt, that his act in shooting and killing Riggs was not caused by mental disease or unsoundness which dethroned his reason and judgment with respect to that act, which destroyed his power rationally to comprehend the nature and consequence of that act, and which, overpowering his will, irresistibly forced him to its commission. Unless you so believe and find, you should acquit the defendant."

"(8) While the law will not exempt from punishment a person who has committed an act while depressed from brooding over misfortunes or disappointments, real or imaginary, if, at the time the act was committed, he had the capacity to know what he was doing and the power to know that his act was wrong, still it is not necessary for the defendant in this case to show that he was afflicted with a disease of the mind from brooding over wrongs, real or imaginary, or misfortunes or disappointments to such an extent as to be incapable of knowing what he was doing and that his act was wrong, in order to be relieved of responsibility. It devolves upon the state to prove to your satisfaction, beyond a reasonable doubt, that at the time the act was committed with which he is charged his reason was not so impaired by brooding over wrongs, misfortunes or disappointments, real or imaginary, or from any other cause, that he was unable to know what he was doing at the time—that his act was wrong—before the defendant can be convicted."

The general instructions were sufficient as to every phase of the case, and entirely accurate. Instruction

No. 15, *supra,* follows *The State v. Nixon,* 32 Kan. 205, 4 Pac. 159, and *The State v. Mowry,* 37 Kan. 369, 15 Pac. 282; indeed, it is almost identical in language with the instruction approved in the Mowry case. The defendant argues that even though instruction No. 15 be a correct statement of the law, it is not sufficiently specific as applied to this case; that the statement that "the law recognizes no form of insanity, although the mental faculties may be disordered or deranged, which will furnish one immunity from punishment for an act declared by law to be criminal, so long as the person committing the act had the capacity to know what he was doing and the power to know that his act was wrong," is not sufficient, standing alone, properly to advise a jury as to the various phases of insanity and criminal responsibility. This is probably true; but the first sentence of the instruction states the converse of the proposition and describes the condition of mind which would absolve the defendant from criminal responsibility for the admitted act. However, since the law recognizes every form of insanity which so far dethrones the reason as to render the actor incapable of knowing the nature and quality of the act he is doing, or that what he is doing is wrong, it would be proper, in a case where the evidence suggests monomania or any other specific form of insanity, to instruct specifically with reference thereto. But it is not suggested that the evidence in this case tends to indicate any particular recognized form of the malady.

The contents of instruction No. 15 have been carefully made up from the best thought of many master minds, and are so universally applicable to cases of this character that we hesitate to suggest any addition thereto or subtraction therefrom. The right and the wrong test of accountability is, as it should be, tersely expressed in this instruction. It is especially the province of counsel in argument to the jury, without departing from the meaning of the instruction, to illumi-

nate it and to assist the jury in applying its principles to the facts as shown by the evidence. This being done, as no doubt it was done by the able counsel for the accused in this case, we can not conceive that the jury were misled by this instruction to the prejudice of the defendant.

Instruction No. 3 asked by the appellant was properly refused. It is the condition of the mind of the accused which determines whether he is criminally accountable for an act denounced by the statute as criminal, and not the name of the mental infirmity, if such infirmity exists. This instruction calls upon the jury to determine whether the act charged was produced by, or was the result of, insanity or delusion, without giving any test for determining the question.

Instruction No. 4 requested and refused in effect asked the court to approve the doctrine of irresistible impulse, and the appellant assigns the failure to do so as error. In *The State v. Mowry,* 37 Kan. 369, 15 Pac. 282, Mr. Justice Johnston, discussing this question of irresistible impulse, said:

"The defendant urges that the instruction is erroneous because it excludes the theory of irresistible impulse or moral insanity. This question received the attention of the court, and was practically decided, in *The State v. Nixon,* 32 Kan. 205, although the question was not fairly presented in that case. It is there recognized as a dangerous doctrine, to sustain which would jeopardize the interests of society and the security of life." (Page 375.)

We adhere to the rule that no delusion or impulse excuses one from the penalty for an act committed which the statute denounces as criminal, unless such delusion or impulse unseats the reason and judgment so far that it can not be said, beyond a reasonable doubt, that the accused at the time of the act did not know the nature and quality thereof, and did not know that what he was doing was wrong. This was the test of responsibility given by the court in this case.

The eighth instruction asked by the appellant and refused relates only to the burden of proof. The court instructed the jury, in substance, that it did not devolve upon the defendant to prove that he was insane or unaccountable at the time he committed the act, but that it devolved upon the state to establish by the evidence, beyond a reasonable doubt, that he knew the nature of the act he was doing and that it was wrong. The requested instruction asks nothing different or further, and it is not error to refuse to repeat an instruction.

There was evidence tending to show hereditary insanity, and also evidence that the accused thought he had been cheated in a transaction, which meant inability to carry on his business and financial ruin to him, and that he had morosely brooded and worried over it. There was no evidence, however, that at any time before or after the shooting he had done any act which could be reasonably characterized as evidence of insanity, unless the act of shooting is itself such evidence. He had for a considerable time been a resident of the county where the shooting and the trial occurred, and there is no suggestion that there was not the fullest opportunity to produce all pertinent evidence or that any such evidence was offered and excluded. So far as appears, the jury had before them all of the evidence that could be gathered by either side bearing upon the issue, and they, under proper instructions, held the appellant accountable and found him guilty of committing the homicide with malice aforethought, but without deliberation or premeditation. The trial court approved the verdict, and we can not say that it was unsupported by the evidence to the degree of certainty required by law.

The judgment is affirmed.