No. 19,417.

THE STATE OF KANSAS, *Appellee*, V. CHARLES P. WARNER, *Appellant*.

### SYLLABUS BY THE COURT.

1. STATUTORY RAPE—*Defense of Insanity—Instructions.* Instructions in a criminal case, where the defense of insanity was interposed, held not to have been materially erroneous.

2. SAME—*Reputation of Defendant After Crime was Committed.* In the circumstances presented, the sole defense relied upon being insanity, an error in allowing inquiry to be made concerning the reputation of the defendant after the commission of the acts complained of does not require the setting aside of the verdict.

3. SAME—*Improper Remarks of County Attorney—Remarks of Judge.* An argument made by the prosecuting attorney, the conduct of persons present in the court room, and the comment of the trial judge therein, held not to require a new trial.

4. SAME—*Motion for New Trial—Misconduct of Jury—Evidence on Motion Erroneously Rejected.* Where a verdict of guilty is rendered without any materially erroneous ruling having been made by the court, but upon a motion for a new trial competent evidence upon a question of misconduct of the jury is erroneously rejected, it is not necessary that a new trial of the guilt or innocence of the defendant should be ordered by this court, but the cause may be remanded with directions that the proceedings shall be resumed at the point where the error was committed.

Appeal from Clay district court; SAM KIMBLE, judge. Opinion filed November 14, 1914. Reversed in part and remanded for investigation of question of misconduct of jury.

*C. Vincent Jones, F. L. Williams,* and *James L. Hogin,* all of Clay Center, for the appellant.

*John S. Dawson,* attorney-general, and *W. T. Roche,* county attorney, for the appellee.

The State v. Warner.

The opinion of the court was delivered by

MASON, J.:   Charles P. Warner was convicted upon a charge of statutory rape, and appeals.   The complaining witness testified to this effect: She worked for the defendant in his office in the summer of 1913; their illicit relations began in July of that year; about a month later she ceased to work for him, but visited him at his office, their relations continuing; in the latter part of October he took her to another county in an automobile, putting up at a hotel and registering as man and wife; he then returned home, but later rejoined her at another place; they then lived together for some weeks.   No effort was made to impeach or contradict this testimony, the defense being made wholly on the ground that the defendant was insane.

Complaint is made regarding the instructions given and refused, bearing on the question of the defendant's sanity.   The court was asked to instruct that if the jury believed that the defendant was insane at times, but not continuously so, it devolved on the state to prove that he was not laboring under such insanity when he committed the acts for which he was prosecuted.   The jury were told that the question for them to determine was the condition of the defendant's mind at the time of the alleged offense.   This seems to cover the point sufficiently.

The court was also asked to instruct that where habitual unsoundness of mind is once shown to exist, "either wholly or partially," it is presumed to continue until the contrary is shown beyond a reasonable doubt.   The instruction was given, with the omission of the words placed between quotation marks.   The defendant also asked an instruction, which was refused, that a person may be sane upon some questions and insane upon others.   We do not regard these rulings as materially prejudicial.   The jury were correctly told that the vital question for their determination was whether

at the time of the acts complained of the defendant knew of their nature and quality, and if he did, whether he knew they were wrong.

The charge is further criticized on the ground that it inferentially placed upon the defendant the burden of proving that he was insane. Considered as a whole we think it was not reasonably open to this construction. It included the statement that the jury might convict if the evidence "failed to raise in their minds a reasonable doubt of the mental soundness of the defendant"; but it also contained this sentence: "It is not necessary for the defendant in this case to prove that he is insane, but if upon all the evidence introduced in this case there is a reasonable doubt in your mind as to whether the defendant was sane or insane at the time complained of in the information filed herein, then you must acquit." (See *The State v. Johnson*, 92 Kan. 441, 140 Pac. 839.)

The defendant offered evidence of his good reputation previous to the acts complained of. The state was permitted on cross-examination to inquire as to his subsequent reputation, and to elicit answers that it was not good. The rule seems well settled, upon sufficient reason, that the inquiry should be limited to the period before the transaction under investigation. But we hold the error not to have been prejudicial in this case, since the only real controversy was as to the defendant's mental condition, and evidence that his reputaton was bad after his relations with the complaining witness began could not well have tended to negative his insanity.

Objection is made to much of the state's evidence regarding the defendant's mental condition, on the ground that the witnesses were not sufficiently qualified. It appears that each of them had had sufficient opportunity of observing the conduct of the defendant to make his opinion of some value, and that no error was committed in this regard. The court held one of

The State v. Warner.

the defendant's witnesses not to be sufficiently qualified to testify on this subject. The ruling may have been erroneous, but in view of the evidence that was admitted the omission of the testimony of this particular witness is not regarded as material.

In the closing argument the county attorney intimated that in some parts of the country people had become disgusted with juries and had resorted to lynch law, and that a conviction should be had to demonstrate that in the county where the trial was had such recourse was unnecessary. The spectators present applauded the statement. The judge said that he was sorry the good people of the county had so far forgotten themselves as to intrude an expression of their sentiment, and cautioned the jury against being influenced by it. The defense argues that the jury must have been affected by the episode. The trial court thought otherwise, and we can not say that such was the necessary effect of the incident.

We conclude that no reversible error was committed in the proceedings prior to the verdict. In support of a motion for a new trial, however, the defendant offered to prove that during the deliberations of the jury, and while a majority of its members were voting in favor of the defendant, some of them said they wondered why he had not taken the stand in his own behalf; and that others said they thought it better for him that he did n't testify. The offer was rejected. The statute forbids the jury to consider the omission of the accused to go upon the witness stand. Whether in this case the prohibition had been violated was a question of fact to be investigated and determined by the trial court. Although the evidence offered, if admitted, might not have proved a violation of the statute, it was competent and material as bearing on that issue. The court decided the question without hearing, and necessarily without giving consideration to, this important testimony. We regard this as a sub-

stantial error, inasmuch as the defendant was entitled to a full investigation of the matter. In such circumstances the practice heretofore has been to set aside the verdict and order a new trial. That procedure, however, seems unnecessary and illogical. We have determined that no error was committed prior to the rendition of the verdict. We do not decide that any of the jurors were guilty of misconduct, but merely that the defendant has not had a full hearing upon the question whether or not such was the case. This error can be corrected by placing the matter before the district court in the same condition as when the ruling was made, so that it may be corrected, and further proceedings taken according to the result then reached. (See *The State v. Tyree,* 70 Kan. 203, 207, 78 Pac. 525.)

The sentence will be set aside, and the cause remanded with directions for the court to investigate the question of the alleged misconduct of the jury, in the light of all available competent evidence, and pronounce judgment or grant a new trial according to the decision that shall be reached in this matter.