The State v. White.

---

No. 24,044.

THE STATE OF KANSAS, *Appellee,* v. MAYME WHITE, *Appellant.*

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Assault With Intent to Commit a Felony—Defense of Insanity—Instructions.* Charged with assaulting her former husband with intent to commit a felony, the defendant interposed the defense of insanity. In substance the court charged that the test of her responsibility was whether at the time of the act she was capable of understanding what she was doing and had the power to know that her act was wrong. *Held,* following *The State v. Nixon,* 32 Kan. 205, 4 Pac. 159, and *The State v. Mowry,* 37 Kan. 369, 15 Pac. 282, and authorities cited therein, that the instruction was proper; and further *held,* that the court properly refused to instruct that if the defendant knew the act to be wrong, but was driven to it by an irresistible impulse arising from an insane delusion, she would not be responsible.

2. SAME—*Instructions as to Burden of Proof.* Instructions on the burden of proof and the question of insanity considered together and held sufficient to

impress upon the minds of the jurors that the burden of proof was not, as to any issue, shifted to the defendant.

Appeal from Douglas district court; HUGH MEANS, judge. Opinion filed October 7, 1922. Affirmed.

*J. B. Wilson,* and *F. B. Dodds,* both of Lawrence, for the appellant.

*Richard J. Hopkins,* attorney-general, and *A. B. Mitchell,* county attorney, for the appellee.

The opinion of the court was delivered by

·PORTER, J.: In 1911 the appellant, Mayme White, was married to A. E. Messenheimer. They lived on a farm in Douglas county, and two children, boys, were born to them. In 1920, the parties were divorced, after which the appellant was married to one Andrew White and lived with him at his residence in the city of Ottawa. In the action for divorce the court gave the custody of the children to the mother and the father was· to pay certain sums toward their support. Through some arrangement between the parties the father was allowed to have the children at intervals, but this occasioned trouble.

On October 14, 1921, the appellant came to Lawrence, carrying a loaded revolver. She made an arrangement ,with her former husband to go with her to the office of her attorney to make some adjustment or .settlement concerning the custody of the children. Messenheimer turned away from her, intending to go to the house to use the telephone, when she fired a shot from the revolver at him, the bullet taking effect in his shoulder. He seized and held her until the police arrived and she was placed under arrest.

Subsequently she was charged with the violation of section 72 of the crimes act, convicted of a violation of section 76 of that act, and sentenced to confinement in the county jail for a period of six months, from which judgment she appeals.

The defense at the trial was insanity. The appellant sought to show that because of physical abuse by her former husband during their married life and the suffering occasioned thereby she became obsessed with the delusion that he intended to deprive her of the custody of her children, and that this suffering had broken her mental power so that "she did not know the difference between right and wrong, and if she did, she had lost all will power to prevent her from doing the thing that she did." The court allowed great latitude in the admission of testimony, but finally excluded testimony offered to show abuse by her former husband, the character of work

he compelled her to do in taking care of live stock, evidence of mis-carriages and abortions, which she claimed permanently injured her health and affected her nervous system; and also excluded evidence offered to show that Messenheimer had threatened to harm her hus-band, Andrew White, and had told her that if she got her boys by order of the court, she could not keep them.

It is claimed that this evidence was offered "to show the cause of the peculiar insanity which led the appellant to commit the act." There was very little, if any, evidence to indicate that the appel-lant at the time she committed the offense, or at any other time, was insane. Her own testimony shows that she knew it was wrong to commit the act; she admits that she came to Lawrence with a loaded revolver and hunted up Messenheimer. It is true she was anxious and somewhat worried in regard to the custody of her children. A physician testified that he had known the appellant a long time. He was called to wait upon her in September, 1919, and found her in a highly excited, nervous condition. An objection was sustained to a question calling for his opinion whether the witness at that time was insane. The court also excluded the offer to show by physicians that she had been examined by them various times within five or six years; and that they had found her in ill health and highly nervous.

The main contention is that it was the duty of the court to add an additional element, in defining insanity, and to instruct that "even if the defendant's mental condition is such that he or she can dis-tinguish right from wrong, but has suffered such impairment of that part of the brain which gives the will power, that the defendant is without the necessary will power to control his or her action be-cause of a diseased brain as aforesaid, then the defendant cannot be held criminally responsible for the act." This amounts to nothing more than what is known as the "irresistible impulse theory," which the court rejected in The State v. Nixon, 32 Kan. 205, 4 Pac. 159, and The State v. Mowry, 37 Kan. 369, 15 Pac. 282. An argument is made to induce a reconsideration of the decision in the Mowry case but the court is well satisfied with the reasoning and conclusions reached therein.

It is urged that the trial court committed error in failing to give an instruction as to "delusional insanity," whatever that may mean. The instruction which the court gave with respect to insanity reads:

"The defendant admits that she fired a shot from a revolver at the time A. E. Messenheimer was shot, but claims that at the time she fired the shot, she was of unsound mind or insane. In this connection I have to advise you

that if when the defendant shot A. E. Messenheimer she was laboring under such a defect of reason from disease of the mind as not to know . . . that what she was doing was wrong, then the law does not hold her responsible for her act. On the other hand, if she was capable of understanding what she was doing and had the power to know that her act was wrong, then the law will hold her criminally responsible for it. If this power of discrimination exists, she will not be exempted from punishment because her mind may have been depressed or distracted from brooding over her troubles. The law recognizes no form of insanity, although the mental faculties may be disordered or deranged, which will furnish one immunity from punishment for an act declared by law to be criminal, so long as the person committing the act had the capacity to know what she was doing and had the power to know that this act was wrong."

The substance of this instruction is approved in *The State v. Arnold,* 79 Kan. 533, 100 Pac. 64; *The State v. Johnson,* 92 Kan. 441, 140 Pac. 839.

It is insisted that instruction No. 15 left in the minds of the jurors the notion that the burden of proof was on the appellant to prove her insanity. Instruction No. 15 reads:

"The defendant is presumed to be innocent until her guilt is established by competent evidence beyond a reasonable doubt, and the burden of proof is always upon the state to thus establish her guilt. This presumption of innocence is a presumption that clings to the defendant through every stage of the trial, and is never relaxed until there is a judgment of conviction. It extends to every material fact, element and ingredient of the offense charged, and must be overcome by the state before there can be a conviction. And, if you believe the defendant guilty, but entertain a reasonable doubt as to which of the two or more degrees of crime she is guilty, she may be convicted of the lower degree only; that is, of the degree touching which you entertain no reasonable doubt."

The contention is that on the issue of insanity the court should have especially charged that the burden of proof rested upon the state, but instruction No. 15 when construed with instruction No. 14 could not have left the jury in doubt. Instruction No. 14 charged that "it is also proper to tell you that every person is presumed to be sane until the contrary is established." The two instructions together, we think, were sufficient to impress upon the minds of the jurors that the burden of proof was not upon any issue shifted to the appellant. (*The State v. Husong,* 109 Kan. 84, 197 Pac. 874; *The State v. Warner,* 93 Kan. 378, 144 Pac. 220.)

Moreover, the defendant made no request for any instruction respecting insanity or the burden of proof. .

We discover no error in overruling the motion for a new trial and the judgment is affirmed.