No. 35,683

FRANK SMITH, *Petitioner*, v. MILTON F. AMRINE, Warden of the Kansas State Penitentiary, *Respondent*.

(134 P. 2d 400)

Opinion filed March 6, 1943.

*Eldon R. Sloan,* of Topeka, argued the cause for the petitioner.

*Shelley Graybill,* assistant attorney general, argued the cause, and *Jay S. Parker,* attorney general, and *Jay Kyle,* assistant attorney general, were on the briefs for the respondent.

The opinion of the court was delivered by

DAWSON, C. J.: This is an application for a writ of habeas corpus by Frank Smith, a prisoner who for the past twenty-two years has been and still is serving a sentence of life imprisonment for the murder of Frank Forney of Sumner county committed in 1921.

The petitioner alleges that his imprisonment is illegal on the following grounds:

1. That the journal entry of judgment sentencing and committing him to the penitentiary was not signed by the judge who presided at his trial.

2. That he had no assistance from counsel.

3. That he was continuously threatened with mob violence.

4. That he was held incommunicado for two weeks in the penitentiary.

5. That he was a poor, indigent person traveling through the country, and when arrested he was told by officers that a mob was going to take him and was rushed to the penitentiary for safekeeping.

6. That he never carried a gun except when he was in the army, therefore he never shot anyone.

7. That he was coerced, disparaged, and denied the right to consult with counselor or friends.

8. That he was rushed from the penitentiary to the district court of Sumner county, and taken before the bar, no charge having been read to him, and that the sheriff meanwhile threatened to let the mob have him.

9. That he did not know what to do and could have done nothing if he had known.

10. That he was taken into the courtroom and taken right out, "never uttering a word, guilty or innocent," and taken from the courtroom to the penitentiary, where he has ever since been illegally confined without redress.

11. That through fear of mob violence petitioner "was forced to accept the judgment of the Summer county district court."

On receipt of the application summarized above, this court ordered that it be filed without deposit for costs; the warden was given 30 days to plead, and the clerk was directed to notify the attorney general. In due time an answer and return was filed by the attorney general in behalf of the warden. It contained a general denial

and pleaded that the petitioner was lawfully held in the custody of the respondent warden of the state penitentiary by virtue of a valid judgment and sentence of the district court of Sumner county, which sentence has not expired. Attached to the warden's answer was a certified copy of the information charging the petitioner with the murder of Frank Forney by shooting him with a revolver in Sumner county on May 19, 1921; likewise a certified copy of the journal entry of judgment and sentence, the material portion of which reads:

"And now on this 30th day of June, A. D. 1921, this cause comes for trial. The plaintiff appearing by James Lawrence, county attorney of Sumner county, Kansas. And the defendant, Frank Smith in person. And it being made to appear to the Court that the said defendant is without counsel. Thereupon the Court appointed E. J. Taggart to act as counsel for said defendant.

"And the said defendant Frank Smith having been fully advised by his said attorney, E. J. Taggart, as to the charge with which he, the said defendant, Frank Smith, stands charged. And thereupon the said defendant, Frank Smith is duly arraigned upon the information filed herein, charging him with the willful, and felonious murder of Frank Forney in the first degree. And thereupon the said Frank Smith with the consent of the Court, and his said attorney E. J. Taggart enters a plea of guilty of murder in the first degree, by murdering the said Frank Forney, as in said information charged. And thereupon the said Frank Smith is asked by the Court if he has any legal cause to show why sentence should not be passed upon him at once. To which the said defendant, Frank Smith, replied that he had none.

"It is therefore considered and adjudged by the Court that the said defendant, Frank Smith, be and he is now, and hereby sentenced to be confined in the state penitentiary of Kansas, situated at Lansing, during the term of the natural life of him, the said Frank Smith, and at hard labor. And the sheriff of Sumner county, Kansas, is now ordered to take the said defendant, Frank Smith forthwith and deliver him to the warden thereof."

Also attached to the answer was a certified copy of the formal commitment, and a copy of the transcript of the record supplied to the warden by the Federal Bureau of Investigation, the full contents of which are of no present concern, unless it is the concluding entry, which reads:

"Escaped from Kansas State Penitentiary 5-4-34.
Arrested 8-19-37 at police department, Los Angeles, California.
Returned to Kansas State Penitentiary 9-5-37."

On motion of petitioner for the appointment of counsel to represent the petitioner the court named Hon. Eldon R. Sloan of Topeka to undertake that duty. Judge Sloan with the consent of his client agreed with counsel for the warden that affidavits may be used as evidence on whatever material issues of fact inhere in the proceed-

ings, as sanctioned by the civil code (G. S. 1935, 60-2830, 60-2835), and that petitioner's verified application for the writ shall be considered as evidence in his behalf.

First, let us dispose of two points in the application which raise no issue of fact. As to point No. 1, the statute says the omission of the judge's signature shall in no wise affect or impair the validity of a judgment upon a conviction in a criminal case (Crim. Code, sec. 254, G. S. 1935, 62-1516).

In point 4 petitioner avers that he was held incommunicado in the penitentiary for two weeks. That single fact, if true, would not warrant his release on habeas corpus. In point 6 he avers that "he never shot anyone." The guilt or innocence of one accused of crime, or convicted of a crime, is not justiciable in habeas corpus. (*Crebs v. Amrine*, 153 Kan. 736, 745, 113 P. 2d 1084; *Jones v. Amrine*, 154 Kan. 630, 121 P. 2d 263.) The points of the application which relate to the alleged threats of mob violence and the action of the sheriff and his deputies in the premises can be considered together. It was the law in 1921, as it still is, that if any person shall be taken from the custody of the sheriff and lynched, the sheriff, *ipso facto*, forfeits his office. (G. S. 1935, 21-1007.) Without elaborating on that statute, it is perfectly manifest that the sheriff is in duty bound to use every reasonable effort to prevent harm to his prisoner by mob violence. And in the rare instances when such violence has been threatened against persons accused of atrocious crimes in this state in the last forty years, the custom of sheriffs has been to take no chances of losing their prisoner by mob violence, but to whisk him away to some distant jail or even to the state penitentiary for safe-keeping until the public temper has time to cool and the danger of mob violence blows over. And in consideration of the atrocious character of the murder for which petitioner had been arrested, it was the part of wisdom for the sheriff, if he had any intimation of danger of mob violence, to take him to some safe place until he could be safely brought back to Sumner county to stand trial. Petitioner says he was held in the penitentiary for two weeks, but we note that the murder was committed on May 19, 1921, and his trial was held on June 30, some six weeks thereafter, so there was manifestly no haste in bringing him back to Sumner county. If the sheriff or sheriff's officer who had petitioner in custody told him there was danger of mob violence, as petitioner avers, there is no reason to doubt the officer's good faith. On the contrary the action of the

officer in taking petitioner first to Sedan and then on to the penitentiary is persuasive evidence that the officer was alert and solicitous for petitioner's protection.

To meet the petitioner's other averments which in summary were that he was denied the assistance of counsel, rushed back from the penitentiary, hustled into and out of the courtroom, no charge being read to him, "without uttering a word, guilty or innocent," and forced "to accept the judgment of the court" while the sheriff threatened him with mob violence—counsel for the warden are somewhat handicapped by the fact that the sheriff, the county attorney and the trial judge at the times mentioned, are now dead. As to the county attorney, Hon. James Lawrence, and Hon. O. P. Fuller, trial judge, the court takes judicial notice of their long and honorable professional careers as lawyers and public servants, and find it impossible to exclude from our consideration the presumption that they would faithfully discharge their duty to see that the petitioner had a fair trial. But their lips are sealed by death and the issues of fact involved in this proceeding must be decided upon the available evidence. We have, however, the affidavits of Dan M. Ratekin, the officer who was undersheriff of Sumner county from 1919 to 1923, and of John Bradley, an attorney of Wellington, Sumner county, who was at the time a law partner of E. J. Taggart, whose name appears as counsel for the petitioner in the journal entry of judgment set out above.

The affiant Ratekin avers that he as undersheriff of Sumner county was the first officer notified of the murder of Frank Forney, that he found Forney's car about half a mile from where Forney's body was discovered, and that he obtained a description of the person who abandoned the car. Next day he was informed that some person was hiding in a granary made out of a dismantled box car in Riverdale about six miles from where Forney's body was found. Affiant and other officers went to Riverdale, opened the granary and found a man who said he was Frank Smith, "who freely and voluntarily admitted to the affiant and other officers that he was the party who had killed the man the day before."

Affiant Ratekin further averred that the statement of the petitioner that he was waiting in the Santa Fe railway yards for a train, and that a group of men with guns surrounded the house where he was keeping warm by a stove frightened him, was not true; that it was a warm spring day; that the Santa Fe railway does not run

through Riverdale; that affiant and another officer took Smith to Winfield (county seat of Cowley county), and that he was not brought to the jail of Sumner county on the day of his arrest.

John Bradley, an attorney of many years' practice in Wellington, Sumner county, averred that in 1921 he and E. J. Taggart were associated in the practice of law; that on the evening of the day Frank Forney was murdered, he and this petitioner were seen leaving the village of Peck together in Forney's car. Peck was near Forney's home. The body of Forney was found in a hedge near his home. He had been shot. A posse was organized to search for Smith who was apprehended next day and taken first to Winfield, thence to Chautauqua county, and still later to the penitentiary. Affiant further avers:

"On June 30, 1921, Frank Smith was brought back to Wellington, the county seat of Sumner county, for trial. The firm of Taggart & Bradley were appointed by the court at that time to defend Smith. Although the journal entry shows that E. J. Taggart acted as Smith's attorney, the fact is that I represented the defendant through all the proceedings. Sheriff Lingenfelter allowed me to use his office at the courthouse to consult with Smith. At that time Smith freely admitted that he shot Frank Forney. He said he had asked Forney for a job and Forney had replied that he would not hire any hobo like Smith. Smith said that this angered him and he shot Forney, killing him instantly. He said that this occurred while they were riding in Forney's car; that he, Smith, ran the car a mile or so farther and when it failed to work, abandoned it, and ran into the woods. The revolver which he used, he said, was given to him by a tramp a few days before.

"On June 30, 1921, the day of the trial, I talked with Smith some two hours in the sheriff's office. At that time he had no desire to plead other than guilty. When his case was called, we went into the courtroom and Smith was arraigned upon the information filed. In reply to Judge Fuller's inquiry as to how he chose to plead, Smith replied that he plead guilty. Judge Fuller asked him if he knew he was entitled to a trial by jury; he replied that he knew it but that he wished to plead guilty and be sentenced. Judge Fuller asked him further if he knew his plea of guilty to the charge of murder meant life imprisonment; he replied that he did. The judge then asked him if there was any legal cause why sentence should not be passed upon him and Smith replied that he had none. The judge then pronounced sentence upon him.

"During the time that I was consulting with Smith and during his trial, there was no semblance of mob violence or even of any threat of it. When the sheriff brought him back for trial, there was no publicity and few people knew that Smith was in Wellington at the time. During our consultation, Smith displayed no concern or fear of mob action, and there was nothing that occurred during that period which would give rise to any such fear. The court proceedings were conducted in an orderly and methodical manner; there was no undue haste on the part of the court or any of its officers while the prisoner was at the bar."

·The affidavits of the former undersheriff and of Attorney Bradley, the latter personally known and highly esteemed as lawyer and citizen by a majority of the justices of this court, together with the other circumstances above mentioned convince the court that in the interval after his arrest and before his trial and at his trial in the district court of Sumner county the rights of the petitioner were zealously respected, that he was given the assistance of counsel, that he was not coerced or intimidated into pleading guilty, and that he has established no ground which would justify his release by habeas corpus. The writ must therefore be denied, and he is remanded to the custody of the warden.

Writ denied.

PARKER, J., not participating.