No. 38,373

Philip I. Fisher, *Petitioner*, v. Frank A. Fraser, Sheriff, et al., *Respondents*.

(233 P. 2d 1066)

Opinion filed July 3, 1951. ██

*Vincent G. Fleming,* of Larned, argued the cause and was on the briefs for the petitioner.

*Glee Smith,* county attorney, and *Willis H. McQueary,* assistant attorney general, both argued the cause, and *Harold R. Fatzer,* attorney general, were with them on the briefs for the respondents.

The opinion of the court was delivered by

PARKER, J.: This is an original proceeding in habeas corpus wherein the petitioner seeks a writ directing his release from confinement in the Kansas State Industrial Reformatory.

The events and proceedings resulting in petitioner's conviction and sentence are not in dispute but should be briefly stated before reference is made to his petition and the single ground on which he relies as requiring his release from the institution in which he is now confined.

Petitioner was adjudged insane by the probate court of Shawnee county on the 27th day of February, 1947, and committed to the Veterans Administration Hospital at Topeka as an insane person. Thereafter the probate court appointed a guardian for his person and estate. August 2, 1948, he was discharged by the authorities at the hospital as restored. Subsequently, on August 5, 1948, the probate court entered an order declaring him sane and restoring him to all his rights as a citizen. However, no order was entered discharging his guardian at that time and the record discloses no order has ever been made discharging that fiduciary.

In April, 1950, petitioner was charged by information filed in the district court of Shawnee county, with the crime of robbery in the first degree. During the course of that proceeding the county attorney of Shawnee county filed a verified motion charging he was insane and asking for the appointment of a medical commission to determine his sanity. This motion was granted and a commission was appointed. On April 26, 1950, after that body had returned a report finding petitioner insane the district court of Shawnee county committed him to the Kansas State Asylum for the dangerous insane at Larned, Kansas, for safekeeping and treatment. July 26, 1950, petitioner and another inmate of the Asylum at Larned escaped from such institution, took an automobile from the grounds of the hospital, and fled to Oklahoma where he was soon ap-

prehended and returned to the institution from which he had escaped.

October 25, 1950, petitioner was released from the Larned hospital and returned to the district court of Shawnee county where he entered a plea of guilty to the crime of robbery in the first degree as charged in the information theretofore filed against him and was paroled by the parole board of Shawnee county.

Thereafter, on November 14, 1950, complaint was filed against petitioner in the county court of Pawnee county charging him with larceny of the automobile taken by him at the time he escaped from the Larned hospital. A warrant was issued and he was arrested and brought back to Pawnee county to answer that charge. After a preliminary hearing at which he was bound over to the district court he was charged by information in that court with the commission of such crime. When the petitioner was arraigned in district court to answer the charge contained in the information Vincent G. Fleming, a reputable attorney of Larned, was appointed by the court to represent him and immediately filed a written request that he be examined by a medical commission for the purpose of determining his sanity. This request was granted and a commission was appointed. December 19, 1950, this commission returned its report, finding the petitioner sane, neither an idiot, nor an imbecile, nor an epileptic, and that as of said date he was able to comprehend his position and make his defense in district court. Thereafter and on January 2, 1951, Mr. Fleming filed and argued a motion to quash the information and to discharge petitioner on the ground he was not legally capable of committing the crime of larceny of an automobile on the date complained of in the information for the reason that three months prior to the commission of such alleged offense and three months thereafter he was an adjudged lunatic, committed to the care and safekeeping of the hospital for the dangerous insane at Larned where the automobile involved was taken from the hospital grounds by him in an attempt to escape. After consideration this motion was overruled by the district court and no appeal was taken from that action. The record as to what happened thereafter is not as complete as it might be. However, there is no dispute as to the facts which, gleaned from allegations of the petition and admissions of the parties in their briefs and on oral arguments can be stated as follows:

On January 22, 1951, petitioner accompanied by his attorney, Louis H. Eversole, a capable attorney of Topeka, who was also representing the petitioner's mother and guardian, made their appearance in Larned and after some negotiations with the county attorney succeeded in inducing that official to file an amended information in which the crime charged against petitioner was reduced from larceny of an automobile, punishable upon conviction by confinement for not less than five to fifteen years, to grand larceny, the punishment for which upon conviction is not to exceed five years. Thereafter, and on the same date, petitioner and his attorney appeared before the district court and entered a plea of guilty to the charge contained in the amended information, whereupon the district court sentenced petitioner upon such plea of guilty to the Kansas State Industrial Reformatory at Hutchinson for a term not exceeding five years for commission of the offense of grand larceny as charged in the amended information. In due time he was delivered to such institution where he is now confined by the respondent superintendent under and by virtue of such judgment and sentence.

The allegations of the petition need not be detailed. It suffices to say such pleading sets forth facts in substance as above related and then charges:

"That because petitioner was an adjudged lunatic, involuntarily in the custody and under the control of the State Hospital for the Dangerous Insane for safekeeping and treatment on July 26, 1950, he was on said date incapable of formulating and executing an intent to take, steal and carry away an automobile with the intention of depriving the owner permanently thereof, and was therefore incapable of being guilty of such crime."

Respondent has filed an answer admitting that he holds petitioner in custody under and by virtue of the aforesaid judgment and sentence of the district court of Pawnee county and denying such restraint is illegal.

Thus, it appears, as petitioner's counsel frankly concedes in his brief and on oral argument, the only issue involved in this case is whether the judgment convicting petitioner of a larceny committed at a time when he was under adjudication of insanity and under commitment to the state hospital for the dangerous insane is valid and warrants the respondent in restraining him of his liberty until expiration of the sentence imposed by its terms. In approaching consideration of this issue it must be kept in mind the petitioner

makes no claim that in the absence of his insanity on the date in question his present incarceration under the existing judgment and sentence would be wrongful or illegal and that stripped of all excess verbiage, since the record discloses no evidence whatsoever touching his capacity to distinguish between right and wrong on the date he took the automobile, the gist of all arguments advanced by him is to the effect that in and of itself the adjudication of his insanity existing on that date was a bar to and renders invalid the judgment and sentence under which he is now being confined.

In this state there can be no question but what insanity at the time of the commission of an offense is to be regarded as a defense in a criminal prosecution and may be asserted at any time during the trial. Indeed our statute so declares in clear and unequivocal language. See pertinent provisions of G. S. 1949, 62-1532, which read:

"Whenever during the trial of any person on an indictment or information, evidence is introduced to prove that he or she was insane, an idiot, or imbecile, or person of unsound mind, at the time of the commission of the offense, and such person shall be found to have been at the time of the commission of the offense alleged in such indictment or information, insane, an idiot, an imbecile, or person of unsound mind, and he or she shall be acquitted on that ground, the jury shall so state in the verdict, and the court shall thereupon forthwith commit such person to the state hospital for the dangerous insane for safekeeping and treatment, and such person shall be received and cared for at said institution. . . ."

In construing the provisions of the foregoing statute and in determining the force and effect to which they are entitled we have recognized that the defense of mental unsoundness is a procedural matter which must be brought to the attention of the court at the time of trial (*Cochran v. Simpson*, 143 Kan. 273, 53 P. 2d 502). We have also held repeatedly that the question of the sanity of the accused at the time of the alleged commission of the offense is one to be determined by the jury upon the evidence introduced bearing upon such issue (*State v. Eye*, 161 Kan. 69, 166 P. 2d 572 and *State v. McBride*, 170 Kan. 377, 226 P. 2d 246) and that the test of liability for commission of the crime with which he stands charged is whether he was capable of distinguishing between right and wrong at the time and with respect to the act committed. (*State v. Nixon*, 32 Kan. 205, 4 Pac. 159; *State v. Mowry*, 37 Kan. 369, 15 Pac. 282; *State v. Arnold*, 79 Kan. 533, 100 Pac. 64; *State v. White*, 112 Kan. 83, 209 Pac. 660, and *State v. McBride*, supra.)

The reasoning behind these decisions is sound in principle. Even an adjudged lunatic is criminally responsible for acts committed during a lucid interval (22 C. J. S., Criminal Law, 121, § 57).

The conclusion to be drawn from the statute and the foregoing decisions is clear and inescapable. It is that insanity, existing as of the date of the alleged commission of an offense is a defense in a criminal prosecution, touching the guilt or innocence of the defendant and affording grounds for his acquittal, which must be asserted, presented, and determined during the trial of the case.

From what has been heretofore related it becomes obvious that to grant petitioner the relief sought by him would require a decision by this court to the effect that by reason of insanity he was not guilty of the crime of grand larceny as found by the trial court under the judgment and sentence rendered by it on his plea of guilty. He is not entitled to a review of that question in a habeas corpus action. Under all our decisions the guilt or innocence of one accused or convicted of crime is not justiciable in a habeas corpus proceeding (*Downs v. Hudspeth*, 162 Kan. 575, 178 P. 2d 219; *Smith v. Amrine*, 156 Kan. 486, 134 P. 2d 400; *Merideth v. Amrine*, 155 Kan. 7, 122 P. 2d 759, certiorari denied, 316 U. S. 670, 62 Sup. Ct. 1047, 86 L. Ed. 1745; *Crebs v. Amrine*, 153 Kan. 736, 745, 113 P. 2d 1084, certiorari denied, 317 U. S. 699, 63 Sup. Ct. 441, 87 L. Ed. 559; *In re Johnson, Petitioner*, 117 Kan. 136, 230 Pac. 67).

The writ is denied.