KRAUTER *v.* MAXWELL, WARDEN.

[Cite as Krauter v. Maxwell, Warden, 3 Ohio St. 2d 142.]

(No. 39027—Decided July 21, 1965.)

*Mr. Herbert LeRoy Krauter, in propria persona.*
*Mr. William B. Saxbe,* attorney general, and *Mr. William C. Baird,* for respondent.

BROWN, J.  Petitioner raises several questions in his petition.  He alleges that he was arrested in his home without a warrant; that he was held for seven days before he was taken before a magistrate; that for two days during such period of time he was subjected to continuous interrogation until a confession was coerced from him; that he was inadequately represented by counsel; that he was not confronted by the prosecuting

witness; and that his conviction was void because he was mentally incompetent at the time of the proceedings in the trial court.

So far as petitioner's arrest is concerned, it is now well established that even if an arrest is illegal it does not affect the validity of subsequent proceedings based on a valid indictment or furnish ground for release by habeas corpus after conviction. *Brown* v. *Maxwell, Warden*, 174 Ohio St. 29; *Henderson* v. *Maxwell, Warden*, 176 Ohio St. 187; *Caldwell* v. *Haskins, Supt.*, 176 Ohio St. 261.

It is also established that the question of adequacy of counsel cannot be raised in habeas corpus but must be raised by appeal. *Rodriguez* v. *Sacks, Warden*, 173 Ohio St. 456; *Jackson* v. *Maxwell, Warden*, 174 Ohio St. 32; *Gallagher* v. *Maxwell, Warden*, 175 Ohio St. 440.

The fact that petitioner was not confronted with the prosecuting witness did not affect the validity of his conviction on a plea of guilty. When an accused pleads guilty he waives a trial and the right to confront witnesses.

Petitioner's contention that he was illegally detained and that he made a coerced confession as a result of such detention is likewise not well taken, as under his plea of guilty no confession was used against him. The fact that a coerced confession exists does not affect the validity of a subsequent plea of guilty. *Caldwell* v. *Haskins, Supt.*, 176 Ohio St. 261.

We are now confronted with the principal question raised by petitioner, his claim that his conviction was void because he was mentally incompetent at the time of the proceedings in the trial court. Nothing in the statement of the physicians who examined the petitioner pursuant to Section 2947.25, Revised Code, indicates that at the time of examination he was unable to recognize the difference between right and wrong in respect of the crime of which he was charged and unable to choose the right and abjure the wrong. This is the so-called McNaghten's test and the test of legal sanity. 10 Clark and Fin. 200 (1843); *State* v. *Frohner*, 150 Ohio St. 53, paragraph 15 of the syllabus. Nor is there anything, either in these proceedings or in the evidence referred to by the petitioner, to indicate that at the time of his conviction upon a plea of guilty

petitioner did not have sufficient soundness of mind to understand and appreciate the nature of the charge against him, to comprehend his situation and to assist his counsel. This is the test of whether or not he was sane enough to stand trial. *State, ex rel. Townsend,* v. *Bushong, Supt.,* 146 Ohio St. 271.

After reading the report of the psychiatrists it is impossible to agree that it demonstrates such mental illness that the guilty plea must now be adjudged to have been ''Not understandingly made by one competent to know the consequences thereof.'' Section 2947.25, Revised Code, commands that all persons guilty of rape must be examined as to their mental condition after conviction and before sentence. The report of this examination and other evidence may be the basis of a finding by the court of mental illness as defined in Section 5122.01 (A), Revised Code (former Section 5123.01, Revised Code), which would justify indefinite commitment of the defendant to the Department of Mental Hygiene and Correction. If so committed the execution of his sentence is suspended. A finding of mental illness of the degree defined by Section 5122.01 (A), Revised Code, is not a finding of insanity under tests demanding a greater degree of mental incapacity. *State* v. *Frohner, supra,* or *State, ex rel. Townsend,* v. *Bushong, Supt., supra.* One who is not, in the language of the report, ''sociopathic and anti-social'' would not be expected to commit the heinous offense to which with the advice of counsel this petitioner pleaded guilty.

Counsel did not interject a plea of not guilty by reason of insanity under Section 2943.03, Revised Code. That section contains this statement: ''A defendant who does not plead not guilty by reason of insanity is conclusively presumed to have been sane at the time of the commission of the offense.'' After the finding that the defendant was mentally ill as now defined in Section 5122.01 (A), Revised Code, counsel failed to move that his client's mental illness was of such severity that the plea of guilty should be withdrawn. If this had been done and refused appeal would have been the remedy.

As late as *Buck* v. *Maxwell, Warden,* 173 Ohio St. 394, this court held that one who fails to plead not guilty by reason of insanity is conclusively presumed to have been sane at the time of the commission of the offense charged, and

that the trial court had jurisdiction which could not be successfully attacked by habeas corpus. If any error occurred, which is extremely doubtful, it was not such as to void the judgment.

Shall we permit a defendant to bypass the statutes which direct inquiry into the question of sanity prior to or at the time of trial? Shall we permit this petitioner to attack the jurisdiction of the trial court years later and prevail on evidence which would not have met any required test if timely raised? Mere mental incompetence of an accused during criminal proceedings in the trial has not been held to void a conviction; such convictions have consistently been held not subject to collateral attack by habeas corpus. 25 American Jurisprudence, 209, Habeas Corpus, Section 84; annotation, 29 A. L. R. 2d 703.

In *Whelchel* v. *McDonald, Warden*, 340 U. S. 122, a defendant convicted by a court martial challenged the legality of his detention by habeas corpus proceedings, asserting that the court martial was deprived of jurisdiction by reason of the treatment of the insanity issue tendered by him. In the opinion by Mr. Justice Douglas the challenge was rejected on the ground that the accused was afforded the opportunity to tender the insanity issue both before and after trial and that any error did not affect jurisdiction, the only issue before the court in habeas corpus.

In a similar case, *United States, ex rel. Smith*, v. *Baldi, Supt.*, 344 U. S. 561, 568, Mr. Justice Reed commented that a denial of due process can hardly be predicated upon the failure of a defense move.

In *Fisher* v. *Fraser, Sheriff*, 171 Kan. 472, 233 P. 2d 1066, 29 A. L. R. 2d 690, it is observed that a judgment entered upon a plea of guilty to a charge of larceny is not rendered invalid because at the time of the crime the accused was under an adjudication of insanity and committed to the state hospital for the dangerously insane.

*Fay* v. *Noi*, 372 U. S. 391, 9 L. Ed. 837, 83 S. Ct. 822, indicates that failure to appeal in state court is a reasonable procedural ground to prevent federal judicial intervention, and that only "exceptional circumstances" where state postconviction remedies have been ignored and abandoned will justify

what Mr. Justice Brennan calls the "Great Writ." We need not go beyond the federal rule.

A case persuasive against the proposition that the constitutional requirements of due process were not observed with a resultant loss of jurisdiction is *Massey* v. *Moore, Warden*, 348 U. S. 105, 99 L. Ed. 135, 75 S. Ct. 145, in which an insane person tried without counsel was granted a writ. Mr. Justice Douglas spoke for the court: "Until 1952 * * * [the defendant-relator] failed [to obtain release on habeas corpus] because the record of his trial erroneously stated that he was represented by counsel. * * *

"* * * *

"* * * One might not be insane in the sense of being incapable of standing trial and yet lack the capacity to stand trial without benefit of counsel."

To the same effect are *Ex Parte Sisson*, 90 Okla. Crim. 47, 210 P. 2d 185 (guilty plea), paragraph four of the syllabus; *Ex Parte Hamlin*, 142 Tex. Crim. 185, 152 S. W. 2d 334 (trial, finding of not guilty by reason of insanity; habeas corpus not applicable to another crime committed seven minutes after the first); *Blodgett* v. *State* (Mo.), 245 S. W. 2d 839 (guilty pleas, insanity suggested before sentence).

We see no exceptional circumstances in this case. All the facts upon which this defendant now relies are in the record. This defendant may still apply for leave to appeal and obtain a review of the ruling upon that application.

The relief is, therefore, denied and petitioner remanded to custody.

*Petitioner remanded to custody.*

TAFT, C. J., ZIMMERMAN, O'NEILL and SCHNEIDER, JJ., concur.

MATTHIAS and HERBERT, JJ., dissent.

HERBERT, J., dissenting. The following additional facts appear in the record. The petitioner was arrested on March

31, 1960, by the Bucyrus City Police on the request of the Seneca County Sheriff's Department, on suspicion of having committed rape. An affidavit was filed by Deputy Jack Frerick on April 7, 1960, in the Tiffin Municipal Court, alleging the rape of a female person, 22 years of age, contrary to Section 2905.01, Revised Code.

On April 25, 1960, an indictment returned by the Grand Jury of Seneca County was filed in the Common Pleas Court of Seneca County.

On April 28, 1960, the following journal entry appears in the record:

"April 28, 1960, defendant present in court and arrigned [sic]. Indictment read by clerk. Defendant not being represented by counsel and it appearing to the court that the defendant has no property and no money with which to employ counsel. Webb Tomb is appointed to represent him. *No plea was made. Case continued until defendant can consult with his attorney.*" (Emphasis added.)

*No other entry appears in the record until* May 23, 1960, when a journal entry and order was made which reads, in part, as follows:

"The defendant herein, having *been* convicted by a plea of guilty of the crime of rape in violation of Section 2905.01 of the Revised Code of Ohio, and it appearing now to the court that the said defendant Herbert LeRoy Krauter is probably mentally deficient, it is hereby ordered, adjudged and decreed that the said Herbert LeRoy Krauter undergo an examination concerning said condition, pursuant to the provisions of Section 2947.25 of the Revised Code of Ohio."

The journal entry and order appointed three psychiatrists to examine petitioner and ordered that "a report of the facts found by them and their interpretation thereof, including their conclusions as to the mental condition of said defendant," be returned to the court, and that a hearing be held on the report, as provided by law.

It is clear that the above journal entry is a purported compliance with Section 2947.25, Revised Code, as in effect in 1960, which required that:

"*After conviction and before sentence*, a trial court *must* refer for examination all persons convicted under Section * * * 2905.01 * * * Revised Code * * *."

It is also clear that the examination required in Section 2947.25, Revised Code, must occur *after* conviction and *before* sentencing. Under the terms of that statute, the trial court could not require an examination *before* conviction. The journal entry of May 23, 1960, thus merely alleges that petitioner had sometime previously been convicted. However, *there is nothing in the record to substantiate this.*

After a thorough examination of the record I cannot find that petitioner was ever arraigned; that he ever entered a plea; or that counsel, allegedly assigned, ever made an appearance on behalf of petitioner.

This court has previously declared that the record of conviction must show that the defendant was arraigned on the indictment. *Hanson* v. *State*, 43 Ohio St. 376. See, also, *Goodin* v. *State*, 16 Ohio St. 344; *Emmons* v. *State*, 14 C. C. (N. S.) 351. Without an arraignment and a plea, a trial court is without jurisdiction to proceed to trial. See *State* v. *Jennings*, 112 Ohio App. 455, 457; *Snyder* v. *State, ex rel. McCoy*, 53 Ohio App. 370. Also, failure of the record to show affirmatively an arraignment and a plea is a matter of substance and not form. See *Crain* v. *United States*, 162 U. S. 625; *Garland* v. *Washington*, 232 U. S. 642, in which case defendant was arraigned, tried and convicted.

The majority opinion deals at some length with authorities pertaining to the sanity of an accused person at the time of the alleged offense. This was not raised as an issue by the petitioner. Rather, the issue raised is the sanity of petitioner during the proceedings in the trial court. The general rule applicable to this later situation is as follows:

"If a person becomes insane after the commission of a crime, he cannot be required to plead or be tried while he is in such condition." 44 Corpus Juris Secundum, 283, Insane Persons, Section 127.

The term, "insane," as used in the above rule, is explained by the following test:

"The test of insanity of an accused precluding his being put on trial for a criminal offense is usually stated to be his capacity to understand the nature and object of the proceedings against him and to conduct his defense in a rational manner; and, if he passes this test, he may be tried, although on some other subjects his mind may be deranged or unsound." *Ibid.*, at page 284.

The above test was subscribed to by this court in *State, ex rel. Townsend,* v. *Bushong, Supt.* (1946), 146 Ohio St. 271, 273. Therein this court, at page 274, determined that the relator was "of sufficient soundness of mind to understand and appreciate the nature of the charge against him, to comprehend his situation, and * * * [was] mentally capable of furnishing counsel the facts essential to the presentation of a proper defense."

In the *Townsend case, supra,* the defendant was ordered committed to the Lima State Hospital prior to trial on an indictment of manslaughter "until he be restored to reason," pursuant to the provisions of Sections 13441-1 and 13441-2, General Code (now Sections 2945.37 and 2945.38, Revised Code).

The above sections of the Code provide a procedure whereby an inquiry may be made as to the sanity of a person accused of a crime, whose case is pending in the Court of Common Pleas, either before or after trial. In pertinent part, Section 2945.37, Revised Code, provides:

"* * * [When it] comes to the notice of the court that such person is not then sane, the court *shall* proceed to examine into the question of the sanity or insanity of said person * * *." (Emphasis added.)

The terms of the above section were held to be mandatory in *Evans* v. *State* (1930), 123 Ohio St. 132. Therein, at page 139, this court observed:

"* * * We think that there cannot rightly be, either under the statute [Section 2945.37, Revised Code] or under the inherent power and duty of the court, a criminal trial of a person not sane at the time of the trial."

Also, in *Townsend, supra,* at page 273, this court held that the above sections of the Code were "declaratory of and in amplification of the well-settled common-law rule that a person

while insane cannot be tried, sentenced or punished for an alleged crime * * *.''

Where a trial judge suspects the existence of present insanity of an accused, there can be no trial until an inquiry is made and the accused is determined to be sane. *State* v. *Smith* (1931), 123 Ohio St. 237, paragraph three of the syllabus. And a court in its discretion may refuse a plea of guilty until it ascertains whether the accused is of sound mind. *Craig* v. *State* (1892), 49 Ohio St. 415, 418. This necessarily follows from the general rule that ''the plea of guilty must be freely and understandingly made by one competent to know the consequences thereof.'' 22 Corpus Juris Secundum 1178, Criminal Law, Section 423(2).

The trial judge thus has a duty to inquire into the sanity of the accused when it ''comes to the notice of the court that such person is not then sane.'' Section 2945.37, Revised Code; *State* v. *Smith, supra.* It is generally held that there must be ''reasonable grounds for an inquiry as to the sanity of accused.'' 23 Corpus Juris Secundum 728, Criminal Law, Section 940(2). Alternatively, ''if no doubt exists with respect to the accused's sanity, a separate trial or investigation of such issue is properly denied.'' *Ibid.* at page 729. Reasonable grounds may be established by information furnished to the court by counsel or creditable third parties, or from an inspection or observation of the accused by the court. *Ibid.* at page 728, footnote 2. See, also, Section 2945.37, Revised Code.

The record in the instant case shows that the trial judge was of the opinion that the petitioner was mentally ill *prior* to any examination.

By express definition, Section 5122.01(A), Revised Code, a mentally ill individual means as follows:

'' 'Mentally ill individual' means *an individual having an illness which substantially impairs the capacity of the person to use self-control, judgment, and discretion in the conduct of his affairs and social relations*, and includes 'lunacy,' 'unsoundness of mind,' 'insanity,' and also cases in which such lessening of capacity for control is caused by such addiction to narcotics, sedatives, alcohol, or stimulants as to make it necessary for such

person to be under treatment, care, supervision, guidance, or control." (Emphasis added.)

Pursuant to the terms of Section 2947.25, Revised Code, the court ordered a psychiatric examination of the petitioner. This examination revealed, in the opinion of the three psychiatrists appointed by the court, that petitioner was mentally ill, and that such condition dated back for years. The court, upon consideration of the psychiatrists' report, expressly found that petitioner was mentally ill. Thus the court's opinion, that the petitioner was mentally ill prior to any examination, was conclusively established by the psychiatrists' report.

Where a court believes that a defendant is mentally ill and the existence of such belief appears in the court's journal, the court has "notice" within the meaning of Section 2945.37, Revised Code. Under the circumstances, it was error for the court to proceed unless the journal also disclosed that the court found that the defendant was "of sufficient soundness of mind to understand and appreciate the nature of the charge against him, to comprehend his situation, and * * * [was] mentally capable of furnishing his counsel the facts essential to the presentation of a proper defense." *State, ex rel. Townsend,* v. *Bushong, supra,* at page 274.

The majority opinion attempts to prove that habeas corpus is not available to the petitioner. The authorities cited, however, are not germaine. *Whelchel* v. *McDonald, Warden,* 340 U. S. 122; *Fisher* v. *Fraser, Sheriff,* 171 Kan. 472, 233 P. 2d 1066; and 29 A. L. R. 2d 703 (all concerned with insanity at the time of the alleged offense). *United States, ex rel. Smith,* v. *Baldi, Supt.,* 344 U. S. 561 (*hearing* held on issue of sanity); *Ex Parte Sisson,* 90 Okla. Crim. 47, 210 P. 2d 185 (trial judge testified defendant appeared normal); *Ex Parte Hamlin,* 142 Tex. Crim. 185, 152 S. W. 2d 334 (double jeopardy); *Blodgett* v. *State* (Mo.), 245 S. W. 2d 839 (coram nobis).

Nor do I interpret *Fay* v. *Noia,* 372 U. S., 391, as holding that the remedy of an insane person at trial is appeal and that to allow relief in habeas corpus in this case would be beyond the federal rule. And in *Massey* v. *Moore, Warden,* 348 U. S. 105, called persuasive by the majority opinion, the issue

there was simply the right to counsel. It does not stand for the proposition that mentally incompetent persons may be tried when they are assigned counsel.

I cannot believe, even under the strictest limitation of habeas corpus, that a trial court has jurisdiction to try insane persons and that relief by habeas corpus is not available. The "great writ," as referred to in the majority opinion, would in effect amount to no writ. States are well advised to provide *adequate* postconviction remedies. See *Case* v. *Nebraska*, decided by the Supreme Court of the United States on May 24, 1965.

It is indeed a sad occasion to discover a record involving a criminal prosecution for a most serious offense where the accused never confronted his accusors; where there is no record of an arraignment, plea or appearance of counsel; and where the record suggests that the accused was mentally incompetent to conduct a defense.

I would grant the relief prayed for.