## E. T. WHITE v. STATE.

No. A-6251. Opinion Filed Feb. 9, 1929.
Rehearing Denied April 13, 1929.
(275 Pac. 1067.)

B. F. Williams, H. W. Fielding, and Ralph Rawlings, for plaintiff in error.

George F. Short, Atty. Gen., M. B. Cope, and Irman S. Price, for the State.

CHAPPELL, J. The indictment charges E. T. White and I. E. Pacey jointly with the offense of receiving a deposit in the Bank of Commerce, an insolvent bank at Sulphur, Okla., knowing at the time said bank was insolvent. Severance was ordered, and plaintiff in error, E. T. White, hereinafter called defendant, was put upon trial, and by a verdict of the jury he was found guilty as charged; the jury fixing his punishment at 2 years in the penitentiary and a fine of $500. The court, in rendering judgment on the verdict, fixed his punishment at confinement in the penitentiary for a period of 18 months. From this judgment he appeals.

On February 23, 1922, defendant White, who was then in charge of the bank, caused the bank to close its doors to the public and transferred its affairs into the custody of the bank commissioner. After an exhaustive examination of the books, records, notes, accounts, and cash of the bank, the bank commissioner found that its assets at the time of the closing were exceeded by its liabilities by more than $51,000. The particular deposit in question was received on the 20th day of February, 1922, three days before its affairs were turned over to the bank commissioner. Charles A. Bryan was the acting vice president and cashier of the bank. Defendant White was a cashier and director, and for a time had been its vice president. I. E. Pacey was president, director, and teller. All of these parties on occasions acted in other capacities. White may not have known the full extent of the frauds and irregularities disclosed by the evidence, but the fact that the defendant was a banker of many years' experience, and the further fact that he himself had made some of the fraudulent entries in the books of the bank, and had participated in the making of other fraudulent entries and transactions, all tended to show that he knew that this bank was insolvent, covering a period of several months before it closed.

This prosecution is based on section 4128, C. O. S. 1921, as follows: "No bank shall accept or receive on deposit, with or without interest, any money, bank bills or notes, or United States treasury notes, gold or silver certificates or currency, or other notes, bills, checks or drafts, when such bank is insolvent; and any officer, director, cashier, manager, member, party or managing party of any bank who shall knowingly violate the provisions of this section, or be accessory to or permit or connive at the receiving or accepting of any such deposit, shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding five thousand

dollars, or by imprisonment in the penitentiary not exceeding five years or by both such fine and imprisonment."

Under the provisions of this statute, knowledge of the insolvency of the bank is an essential element of the offense.

It appears from the evidence that the defendant White, with others, acted as teller; that he and others had charge of the cash, made remittances, book entries, received deposits, and had access to the notes and accounts; and that he was acquainted with the contents of the books and records of the bank and its assets and liabilities. The particular deposit here in issue is shown by Plaintiff's Exhibit No. 28, being entry in the pass-book of the "Artesian Hotel in Account with the Bank of Commerce, Sulphur, Oklahoma, February 20, 1922, deposited $41.00." This exhibit and other testimony shows that this deposit was received by the codefendant, Pacey, but the records also show that on this day and days prior thereto, and thereafter until the 23d day of February, 1922, both Pacey and the defendant systematically worked together in receiving deposits from various depositors, thus indicating that the act of one was the act of both.

The first error complained of by the defendant is in the refusal of the court to give defendant's requested instruction No. 2, which instruction is as follows:

"You are further instructed that a bank shall be deemed to be insolvent, first, when the actual cash market value of its assets is insufficient to pay its liabilities; second, when it is unable to meet the demands of its creditors in the usual and customary manner; third, when it fails to make good its reserve as required by law. It is not necessary that the bank shall have on hand sufficient cash to pay all of its depositors, or any considerable number of them on the same day or in case of a run on the bank of some extraordinary demand beyond the usual

and customary manner. It is only necessary for it to have on hand cash, or available assets sufficient to meet the demands that are usually made on it from day to day in the ordinary course of business. In determining the value of the assets, you should take into consideration the actual cash market value of the assets on the 21st day of February, 1922.

"If, therefore, you find from the evidence, beyond a reasonable doubt that the actual cash market value of its assets was not sufficient to pay its liabilities on the 21st day of February, 1922, or if you find from the evidence a reasonable doubt that the Bank of Commerce was not able to meet the demands of its creditors in the usual and customary manner, or if you find from the evidence beyond a reasonable doubt that the Bank of Commerce failed to make good its reserve as required by law, then in either event, if you so find, you are instructed that the Bank of Commerce was an insolvent banking corporation and you should so find. If, on the other hand, you fail to find the Bank of Commerce was an insolvent banking corporation as defined in these instructions, or if you have a reasonable doubt of the insolvency of the Bank of Commerce on February 21, 1922, you should give the defendant benefit of such doubt and acquit him."

It will be observed this goes far beyond the instruction given in the case of Appelget v. State, 33 Okla. Cr. 125, 243 P. 251. In this case this court held: "It certainly was not the legislative intent to make criminal the accepting or receiving of deposits in a bank insolvent in that technical sense in which the word is used in section 4124, where a bank may be deemed insolvent when it shall fail for a period of 30 days after notice to restore its reserve." It will be noted that, in the instruction requested, the defendant asked the court to instruct: "Third, when it fails to make good its reserve as required by law." This court, in the case of White v. State, 36 Okla. Cr. 57, 252 P. 455, held: "That a bank might be insolvent for a failure to maintain its cash reserve as required by law has no application in a criminal prosecu-

tion." The instruction also failed to state the truth as to the facts alleged. The instruction fixed the date of the insolvency as February 21, 1922, when the indictment alleged the bank to be insolvent as of February 20, 1922. Even though the balance of the instruction might clearly state the law, it was not reversible error for the court to refuse to give the requested instruction, under the rule laid down in the Appelget and the White Cases heretofore cited.

This court, in Dennison v. State, 25 Okla. Cr. 236, 219 P. 957, has held: The criminal "court is not authorized to reverse a judgment of conviction because of erroneous instructions unless, after an examination of the entire record, it appears that the error complained of probably resulted in a miscarriage of justice, or else constitutes a substantial violation of the constitutional or statutory right of the defendant." It is not error to refuse a requested instruction stating the law applicable to the issues, if the law is sufficiently stated in the charge. It was not reversible error for the trial court to refuse to give defendant's requested instruction No. 2, because such instruction did not clearly state the law, and for the further reason that the general instruction of the court sufficiently covered the law.

The defendant did not testify in his own behalf, and offered no evidence to controvert the testimony of the state that the Bank of Commerce was insolvent on the 20th day of February, 1922, because the cash value of its assets lacked more than $50,000 of equaling its liabilities, and that the defendant knew the bank to be insolvent on the 20th day of February, 1922, as alleged in the information. The evidence clearly shows that the bank was insolvent, because the actual cash market value of its assets was not equal to its liabilities on that day, and proof of that fact, together with the guilty knowledge

of the defendant, was all that was required to secure a conviction.

The defendant next complains that the court erred in refusing to give defendant's requested instruction No. 5, which is as follows: "You are instructed that in determining the value of the bank's assets upon the question of its solvency, you should include the additional liability of each stockholder to the bank and to its creditors in an amount equal to the par value of the stock in the bank held by such stockholder in such sum as you may determine from the evidence is the value of such stockholder's additional liability."

Section 4122, C. O. S. 1921, with reference to stockholders' liability is as follows: "The shareholders of every bank organized under this article shall be additionally liable for the amount of stock owned, and no more." It will be noted that the words "shall be additionally liable" appear in this section of the statute. No stockholder is liable under this section of the statute until the bank is closed and taken over by the bank commissioner. The most that could be said is that this is a contingent liability, which could only arise at a time when the bank was insolvent as defined by this court.

An examination of the evidence offered in the case and the instruction given by the court shows no other instructions offered and refused by the court are complained of. Under the evidence in the case and the law as laid down in the syllabus, the instructions given by the court were sufficient to inform the jury of the issues of the case and to enable them to correctly arrive at a verdict.

The judgment entered did not conform with the verdict of the jury. The jury fixed the defendant's punishment at 2 years in the penitentiary and a fine of $500. The court, in pronouncing judgment, sentenced

the defendant to 18 months in the penitentiary. This court in Barrett v. State, 39 Okla. Cr. 50, 263 P. 166, cited with approval the case of Caudill v. State, 9 Okla. Cr. 66, 130 P. 812, where it was held "that the judgment of conviction and sentence must conform to the verdict where the verdict is in conformity with the law. Where there is a variance between the verdict of the jury and the sentence of the court, this court should remand the case with directions to the trial court to correct its judgment and to make it conform to the verdict."

It is the order of this court that this case be remanded to the district court of Murray county, and the judge of such court is ordered to render such judgment and sentence as conforms with the verdict of the jury.

Case remanded to the district court, with directions to render judgment in conformity with the verdict.

EDWARDS, P. J., and DAVENPORT, J., concur.