## JESSE MITTS v. STATE.

No. A-10690. June 26, 1946.

(170 P. 2d 563.)

368

Frank Hickman, of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., and Dixie Gilmer, Co. Atty., of Tulsa, for defendant in error.

BAREFOOT, J.  The defendant, Jesse Mitts, was charged in the district court of Tulsa county with the crime of murder;  was tried, convicted, and given the death penalty.  From this judgment and sentence he has appealed.

A short statement of the history of this case is necessary before a consideration of the question raised by the appeal.

The defendant was charged with having murdered Ray Martin in Tulsa county, on December 24, 1944. He was tried for this offense on March 6, 1945, and was convicted by a jury and given the death penalty.

The evidence revealed that defendant killed the deceased with a revolver he had purchased for that purpose a few days prior thereto. He went to the home of Martin, and waited at a window for him to undress, then shot through the window, and Martin died as a result of the wound received.

Defendant did not enter a plea of insanity at his trial. After his conviction, and prior to the entering of judgment and sentence, a motion for new trial and a motion in arrest of judgment were filed, and it was stated therein that the defendant was insane. These motions were set for hearing on March 23, 1945, and on that date the motion for a new trial was overruled; and the question of defendant's sanity was set for hearing before a jury on April 3, 1945, in compliance with 22 O.S.1941 § 1162, which is as follows:

"When an indictment or information is called for trial, or upon conviction the defendant is brought up for judgment, if a doubt arise as to the sanity of the defendant, the court must order a jury to be impaneled from the jurors summoned and returned for the term, or who may be summoned by direction of the court, to inquire into the fact."

The trial judge who had presided at the trial of defendant was ready to proceed with the trial before the jury on the sanity question, when the judge who had been

elected to the office of district judge in Tulsa county, and who had returned to Tulsa after his discharge from the United States Army, took his oath of office, and ascended to the bench and proceeded with the sanity trial. After defendant had introduced certain evidence of both doctors and laymen before the jury, and had rested his case, the following occurred:

"Mr. Hickman (counsel for defendant): That is all, your honor. Mr. Gilmer (county attorney): The state has no proof. The Court: Come up here a minute. (Whereupon followed argument at the bench outside the hearing of the jury, and thereupon the proceedings were continued in the presence and hearing of the jury as follows:) Mr. Gilmer: Comes now the State of Oklahoma, at the conclusion of all the testimony on the part of both the defendant and the State of Oklahoma, and requests the court to advise the jury to return a verdict of sanity. The Court: Overruled. Mr. Gilmer: Exception. The Court: Gentlemen of the jury, this case is a little unusual, as you gentlemen readily understand. You will agree, Mr. Hickman, that this case may be withdrawn from the consideration of the jury at this stage of the proceedings? Mr. Hickman: Yes, your Honor. The Court: Now, gentlemen, as I said, this is a matter that as you see is somewhat unusual. I am of the opinion that if I submitted this to you with the evidence that is before you at this time, there was not evidence here, gentlemen, to show that the man is insane presented to you at this time, but I want this man examined by our representatives of our state, and am going to use my efforts to have him committed to the State Sanitarium at Vinita for observation and I don't think there is sufficient evidence here to submit this question to you. There might be some legal problems involved in it, but both the state and the defendant have agreed that this matter may be withdrawn from your consideration and that this man may be sent to an institution for examination. I don't think that what we have had here would be enough for you gentlemen

to say that he is not sane. I just don't think there is enough there but still there is—I don't know whether the matter has been fully explored, whether his mental condition has been fully examined and I want to have that done by disinterested authorities and that is what we will do in the case. So, gentlemen of the jury, you will be discharged from further consideration of this matter and you will see the clerk and he will take care of your compensation. Mr. Gilmer: Will your Honor explain to the jury that the call of the jury was requested? The Court: Yes; Judge Clendinning who heard this matter had some doubt in his mind and you gentlemen had to be called to pass upon the question and to hear additional testimony in the matter, but under the circumstances this happens to be my way of wanting to take care of it. I don't believe or see how under the evidence the question could be submitted to you, because nobody on the witness stand has said at any time that the man is sane or insane and if that is the case with somebody that knows something about it, I could not expect twelve men to do otherwise. So, gentlemen, you will be discharged from this matter. Thank you very much."

On May 1, 1945, the court overruled defendant's motion in arrest of judgment, and sentenced defendant to be electrocuted at the State Penitentiary at McAlester on July 21, 1945. Defendant perfected an appeal to this court on October 25, 1945, by filing case-made and petition in error in the manner provided by law, and this court entered an order staying the execution of defendant pending the appeal.

This case was set for oral argument before this court on March 14, 1946. Briefs have been filed by both the defendant and the state. At the time of oral argument and by briefs of both the defendant and the state, our attention has been called to the fact that on October 10, 1945, pending this appeal and while defendant was

being held in the death cell at the State Penitentiary at McAlester, the county attorney of Pittsburg county filed a petition in the district court of Pittsburg county alleging that the defendant was at that time insane, and praying that a jury be impaneled in compliance with 22 O.S.1941 § 1005, which is as follows:

"If, after his delivery to the warden for execution, there is good reason to believe that a defendant under judgment of death has become insane, the warden must call such fact to the attention of the county attorney of the county in which the prison is situated, whose duty it is to immediately file in the district or superior court of such county a petition stating the conviction and judgment and the fact that the defendant is believed to be insane and asking that the question of his sanity be inquired into. Thereupon, the court must at once cause to be summoned and impaneled from the regular jury list a jury of twelve persons to hear such inquiry."

Attached to this petition was a letter from Dr. F. M. Adams, medical superintendent of the Eastern Oklahoma Hospital at Vinita, which was as follows: (omitting caption)

"My dear Mr. Conner:

"In reference to Jesse Mitts examined by me at the Oklahoma State Penitentiary September 25, it is my recommendation that this man be removed at an early date from the penitentiary into this institution for treatment, as he is a definite mental case. It is my opinion that this man might die if he is not given proper psychiatric care, and I think it is necessary that we expedite this man's removal at an early date.

"He has a history of being discharged from the United States Army on October 18, 1943. The diagnosis at the time of his discharge was Psychoneurosis, mixed type, severe. I have gone into this man's record very carefully and find that while in the army he had a very severe head-

ache and was hospitalized for several weeks. After being out of the hospital, the man never was normal again and was finally given his discharge. Up to the time he had this headache, he had been an excellent soldier and had risen to the rank of first sergeant.He was connected with the ground forces of the Air Corps in a very responsible position.

"It is my opinion that this man's mental condition was caused by his headache, and it is seriously doubtful if he will ever show any improvement in his mental state.

"Trusting this will give you the desired information, I am," etc.

Thereafter, and on October 17, 1945, a jury was empaneled, and after hearing the evidence, rendered a verdict finding the defendant to be insane, and on October 19, 1945, the defendant was transferred to the Eastern Oklahoma Hospital for Insane at Vinita, Oklahoma, where he is now being held.

After setting up the above facts in the brief filed by the Attorney General on behalf of the State, it is stated:

"After consideration of all the facts in connection with this cause and sections 1162 and 1163 of Title 22 Oklahoma Statutes 1941, and the law in connection with matters of this kind, the defendant in error has no objection to the court remanding the cause to the trial court with instructions to set aside the judgment and to enter an order postponing the pronouncement of judgment and sentence on the verdict until the defendant recovers his sanity."

This conclusion is in accord with the contention of the defendant.

For the reasons above stated, this cause is remanded to the district court of Tulsa county, with directions that the judgment and sentence be set aside and an order be

entered postponing the pronouncement of judgment and sentence on the verdict until the defendant recovers his sanity. The medical superintendent of the Eastern Oklahoma Hospital, located at Vinita, Oklahoma, is hereby ordered and directed to deliver the defendant to the sheriff of Tulsa county upon his discharge from the Eastern Oklahoma Hospital, to be held by said sheriff subject to the order of the district court of Tulsa county.

JONES, P. J., concurs. DOYLE, J., not participating.