ROBERT LAWSON HOVIS v. STATE.

No. A-10643.    Jan. 22, 1947.

(176 P. 2d 833.)

300

Laynie W. Harrod, of Oklahoma City, for plaintiff in error.

· Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for defendant in error.

JONES, J.   The defendant Robert Lawson Hovis was charged in the district court of Oklahoma county by information with the crime of manslaughter in the first degree, was tried, convicted of manslaughter in the second degree, with the punishment left to the court. After motion for new trial was overruled, the defendant was ordered to serve a term of two years in the penitentiary and has appealed.

The defendant was the owner of the Jack Pot beer tavern in Oklahoma City. On the night of June 2, 1944, he shot and killed one Olan Cowan at his place of business. The killing was admitted, but defendant entered a plea of self-defense.

The only contention presented by the appeal is that the evidence is wholly insufficient to sustain the conviction.

There are not many points of dispute in the evidence of the state and the defendant. The undisputed testimony was that the deceased together with one Buster Martin and Buck Enloe had been drinking beer on the afternoon of June 2nd at two or three different beer taverns in Oklahoma City. About 5 p. m. they went to the Jack Pot beer tavern operated by the defendant, but the defendant refused to permit Buck Enloe to come into his tavern. (State's testimony denied by defendant was that the defendant pulled a pistol and told Enloe that he was going to whip him and refused to allow him to enter.) After this controversy, the deceased and Buster Martin took Enloe to his home, and Martin and Cowan later in the evening returned to defendant's beer tavern. The defendant at that time had retired to a bedroom in the back of his tavern to sleep. Martin and the deceased, Olan Cowan, were quarrelsome with some of the patrons of the beer tavern and almost had a fight with one of them. A waitress employed by the defendant intervened in a dispute between the deceased and one of the patrons and deceased slapped her. He and Buster Martin then left the tavern.

The witness Buster Martin testified that after he and the deceased left the tavern they noticed that the deceased had lost his cap, and they started back to the tavern to get it. That just as they reached the screen door and opened it, the defendant told them they could not come in. Martin said that they were coming in, and when they started in the defendant raised his gun and shot the deceased, killing him almost instantly. That the defendant then pointed his pistol at Martin and said he was going to kill him, but Martin said, "Happy, you done killed one man," to which the defendant replied, "I don't give a damn. I will kill another one." That when this was said, the witness Martin fled. Martin further testified that neither he nor the deceased

were armed at the time of the shooting, and they were not making any effort to harm the defendant. The deceased, Olan Cowan, was 22 years of age, and not a very large man.

The state then introduced in evidence certain pictures taken on the inside and outside of the beer tavern. These pictures were taken the day following the homicide. One of these picture shows the bloody spot on the porch of the tavern where the deceased lay immediately after he was shot. This photograph was introduced in evidence by the state to substantiate their theory that deceased was standing outside the door when he was shot. This evidence was for the purpose of refuting the testimony on behalf of defendant that the shooting occurred inside at a time when the deceased was threatening him with a quart-sized beer bottle. There was also admitted in evidence a photograph taken of the deceased after his death which showed the entry of the bullet above and to the back of the right ear, which bullet emerged above the left eye. This photograph was offered in evidence to support the state's theory that the deceased was not facing defendant when he was shot.

Buck Enloe testified that he went to the Jack Pot tavern with Olan Cowan and Buster Martin about 5:30 p. m. on June 2nd. That when they drove up in front of the tavern, the defendant came up to the side of the car with a gun in his hand and said he was not going to allow the witness Enloe to enter the tavern. The deceased Olan Cowan then took Enloe to his home. Enloe admitted on cross-examination that he and the deceased had been to several places that afternoon drinking beer, and that the witness was under the influence of intoxicating liquor when he went to defendant's place of business.

James Farmer, Alvin Smith, Vesta Smith, C. T. Smith and C. D. Roberts, who were inside the tavern drinking

beer at the time of the homicide, testified to substantially the same facts on behalf of defendant. That the deceased Cowan and Buster Martin came into the Jack Pot tavern about 9 p. m. That Buster Martin walked over to a table where the patrons were drinking beer and spoke to James Farmer and said to him, "I can whip you." That Martin then went back to where Cowan was drinking beer, and shortly thereafter Cowan walked over to the booth and gave Farmer a shove. That Ada Parks, a waitress at the tavern, intervened and said they could not fight in there. Whereupon the deceased struck her a blow causing her to stagger across the room against the bar. The patrons of the tavern testified that Martin and Cowan then left and were gone about five minutes when they returned. That during the time they were gone, the defendant was awakened and told what had occurred.

The defendant did not take the witness stand, but Ada Parks, a waitress at his tavern, testified to substantially the state of facts as testified to by the patrons of the tavern. In addition, she testified that when the deceased and Martin returned the second time, the defendant was awakened and came out of his bedroom inside of the tavern behind the counter. That Martin and the deceased started fighting Hovis and calling him all kind of names. That the defendant ordered them to leave, but instead of leaving, the deceased and Martin only fought the defendant a little harder; that the deceased and Martin started throwing empty quart beer bottles at the defendant. That defendant said, "Boys, you better stop crowding me," but that the two boys kept on fighting him, and defendant reached behind the counter and got his pistol. That defendant had the pistol by the barrel and was trying to ward off licks from the beer bottles with it. That the deceased reached to get another bottle, and when he did, the defendant threw his

hand up to ward off a blow, and the gun went off accidently and the boy fell. That just before the deceased was shot, the defendant fired a shot over the heads of the boys to try to scare them, but that the deceased and Martin refused to leave and kept on cursing the defendant and fighting him. Ada Parks was corroborated in most of her testimony by the witness Lois Weaver, who was sitting at the booth with James Farmer and the Smith family.

The conflicting evidence presented by the state and the defendant concerned mainly as to what happened at the beer tavern when Martin and the deceased Cowan returned the second time on the night of the homicide, and whether the slaying occurred inside or outside of the tavern. If the jury had believed that the killing occurred in the manner testified to by Ada Parks, they would have been justified in returning a verdict of not guilty. They could have concluded, if they had believed the testimony of defendant's witnesses, that defendant had adequate provocation to have fired the fatal shot in self-defense.

Under the law the defendant had a right to order the deceased from his premises and to prevent a trespass by him on the premises, but he was not authorized to defend his premises against an unlawful entrance by taking a human life, however, if the trespasser was not attempting a felony. In such cases, the property owner must suffer the trespass and seek redress at the hands of the law rather than commit homicide. Schmitt v. State, 57 Okla. Cr. 102, 47 P. 2d 199; Johnson v. State, 59 Okla. 283, 58 P. 2d 156.

In Schmitt v. State, supra (57 Okla. Cr. 102, 47 P. 2d 210), this court said,

"Construing this section in Jackson v. State, 49 Okla. Cr. 337, 293 P. 567, 568, it is held:

· " 'A person may resist a trespass on real property in his possession, where such trespass does not amount to a felony, and may eject the trespasser therefrom by the use of any reasonable force short of taking or endangering human life; but if he is unable to prevent a trespass, where no felony is attempted, by any means short of taking or endangering human life, he must suffer the trespass and seek redress at the hands of the law rather than commit homicide.' And see Garrison v. State, 19 Okla. Cr. 3, 197 P. 517.

"In the Dickinson Case (Dickinson v. State, 3 Okla. Cr. 151, 104 P. 923) cited, this court said:

" 'A mere trespass upon the land of another, even after the trespasser has been warned to depart and has refused, does not justify the landowner to use a dangerous or deadly weapon to resist the trespass. * * * The putting in use of a deadly weapon shows a wanton disregard of human life. Clark in his work on Criminal Law, at page 145, lays down the proposition in this terse and explicit language.

" ' "A person may resist a trespass on his property, real or personal, not amounting to a felony, or removal or destruction of property not feloniously attempted, by the use of any reasonable force, short of taking or endangering life; but, if he is unable to prevent it, and there is no felony attempted, he must suffer the trespass and the loss of property, and seek redress at the hands of the law, rather than commit homicide." '

"In the case of Marshall v. State, 11 Okla. Cr. 52, 142 P. 1046, syllabus 2, this court said:

" 'A landowner is not justified in making an assault upon another with a dangerous or deadly weapon in resisting a trespass on his premises, when no felony is attempted.' "

In Johnson v. State, supra (59 Okla. Cr. 283, 58 P. 2d 157), it is stated:

"A person has the right to use necessary and sufficient force to defend his habitation from unlawful entrance, or

to prevent a trespass on the premises, provided no undue advantage is taken nor any dangerous weapon used."

In the case of State v. Gallagher, 4 Wash. 2d 437, 103 P. 2d 1100, it is stated:

"Accused's killing of deceased by the use of more force than was necessary in attempting to expel deceased from accused's home would constitute 'manslaughter', in the absence of justification or excuse."

22 O. S. 1941 § 745 provides:

"Upon a trial for murder, the commission of the homicide by the defendant being proven, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable."

In this case, the killing of deceased is admitted. The proof of the state did not show that the defendant was justified in taking the life of the deceased. When the defendant under this statute seeks to prove circumstances of mitigation or that justify or excuse his act, it generally raises an issue of fact for the determination of the jury.

In the case of Jones v. State, 20 Okla. Cr. 233, 202 P. 187, it is held:

"Where the circumstances proven on the part of the state reasonably tend to show that the accused perpetrated, or may have perpetrated, the fatal acts in self-defense, and where the homicide is admitted or proven, there is no shifting of the burden of proof from the state to the accused. * * *.

"(a) Under such circumstances, even though the evidence on the part of the state indicative of the guilt of the defendant may not be convincing, if there is any substantial evidence tending to prove the guilt of the accused, that

question is properly for the jury, and a demurrer to the evidence, under such circumstances, is properly overruled."

The deceased and Martin were certainly acting improperly at the defendant's tavern. Their words and general conduct were very provocative. The defendant was authorized to evict them from his premises. Under the state's evidence, the deceased was doing no more than uttering abusive language and threatening to fight when slain. He and his companion were both unarmed. According to the state's evidence, the deceased had returned to the tavern to secure a cap which he had left. Human life is a precious thing. Once taken, it cannot be restored. It appears to us that the jury acted in a reasonable manner when they concluded that the defendant was not justified in taking the life of the deceased to prevent a threatened breach of the peace or trespass on his premises.

No question has been raised concerning the correctness of the instructions which were given, and we have found no error in the record sufficient in importance to justify us in concluding that the defendant was not granted a fair and impartial trial.

The judgment and sentence of the district court of Oklahoma county is affirmed.

BAREFOOT, P. J., and BRETT, J., concur.