## Ex parte SISSON.

No. A-10972.  Sept. 28, 1949.

(210 P. 2d 185.)

48

Jack L. Spivey, Oklahoma City, for petitioner.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for respondent.

JONES, P. J.   This habeas corpus action is brought for the purpose of attempting to secure the petitioner's release from confinement in the State Penitentiary.   The

amended petition alleges that the petitioner was charged by a criminal complaint filed before the county judge of Payne county sitting as a committing magistrate with the crime of rape in the first degree allegedly committed on October 10, 1939; that on November 2, 1939, the petitioner entered his plea of guilty to said charge and was sentenced by the district court of Payne county to serve a term of life imprisonment in the State Penitentiary; that he was immediately transported to the penitentiary and has since been confined in that institution serving said sentence with the exception of a period of time of approximately five years, during which he was committed to the insane asylum at Vinita, Okla., for treatment.

The verified petition further alleges that the judgment and sentence is void for the reason that the petitioner, some five years previous to the time of the commission of the alleged crime, had sustained a serious head injury which caused him to be unconscious for a period of four days; that subsequent to said head injury, the said Noah R. Sisson had mental disturbances and was mentally unbalanced to the extent that he could not discern right from wrong; that at the time of the commission of the alleged offense, he did not know right from wrong and was insane at the time the purported plea of guilty was entered to the charge of rape.

The petitioner introduced evidence in the form of affidavits from several citizens of Drumright who had known him for years, in which they stated in substance that prior to the injury to petitioner on June 27, 1934, he was normal, but that subsequent to said injury he commenced to act as if he was mentally unbalanced.

The petitioner swore that he was 36 years of age; that on June 24, 1934, while working in the oilfields near

Bristow he was struck with a joint of pipe and sustained a severe head injury; that he was unconscious for several days; that his head injury caused him to have severe headaches and dizziness; that he was arrested and placed in jail for the offense of rape and remained in jail for a period of three days or less during which he did not remember talking to any attorney; that a deputy sheriff or jailer told him while he was in jail there was a mob gathering, and that he would either plead guilty or they would hang him; that he was then taken before the district judge where he entered his plea of guilty and was immediately taken to the penitentiary to commence the serving of a life sentence; that he stayed at McAlester for approximately six months and was then sent to the State Hospital for Insane at Vinita, where he remained for a period of five years receiving shock treatments and other medical attention for his mental ailment.

To refute the evidence of the petitioner, the state showed by the testimony of Louis Smith, deputy sheriff of Payne county, that said rape charge was filed against the defendant in the county court of Payne county on October 16, 1939; that a warrant was issued for his arrest, but that he could not be located in Payne county; that an investigation by the officers revealed that petitioner within a few hours after the crime was committed had boarded a train for Houston, Tex.; that they apprehended him in Houston where he had joined the army and was located at Kelly Field, Texas; that, he, the deputy sheriff, was present on October 26, 1939, when Sisson was arraigned before the county court of Payne county, at which time the county judge explained in detail all of the rights which the defendant, Sisson, had to a preliminary trial, to take 24 hours to make up his mind whether or not he wanted a preliminary trial; that he had a

right to counsel and that the court would appoint counsel, if defendant requested it, to aid him in the preparation for the preliminary examination; that after being fully advised, the said Noah Sisson told the court that he did not desire a preliminary trial and wanted to waive it; that the county court thereupon entered an order binding the said Noah Sisson over to the district court for a trial; that thereafter an information was filed in the district court of Payne county charging Sisson with the crime of rape in the first degree; that at the time of the arraignment of the defendant before the district court, the said court appointed Robert L. Hert and Blakely Murphy as attorneys to represent the said Sisson; that a plea of not guilty was entered by the said Sisson at that time.

Shortly after the petitioner was apprehended, he gave a written signed confession in which he detailed the facts concerning his commission of the crime of rape upon Lois Ewin, on October 10, 1939, and in said confession he gave the details of two other criminal assaults on two other young girls; one on August 25, 1937, and the other in July or August, 1939. The written confession was introduced in evidence and reads in part as follows:

"On or about the 25th day of August, 1937, while in the city of Cushing, Oklahoma, one Sunday afternoon I was driving my father's Pontiac Sedan, Six Wheel with fender wells for the spare wheels and which car was gray color. I saw a little girl walking along on the east side of the City Building and pulled up to the corner and turned around and went back and asked her to deliver a package for me, she agreed to and I got her in the car and took her out in a cornfield southeast of Cushing, Oklahoma, and there against her will and consent I raped her. I then brought her back to a point about two blocks south of a grocery and filling station located on South Little street in Cushing. I then returned to my mother's house in Drumright, Oklahoma. I

have since learned that the girl's name is Ophelia Robertson and that at the time of the commission of this act of sexual intercourse with her she was living in Cushing.

"Then on or about the middle of July, or August, 1939, I was down in the City Park in Cushing when the little Beaver girl came down through the park and I asked her if she would deliver a package for me if I would give her two dollars, to which she agreed and I took her off down in the park and put her down on the ground and started to have sexual relations with her, but she begged me so that I decided to let her up. You say that there was marks on her neck where she said she had been choked. Well, if she was, it was my passion that caused me to do it.

"Then on the 10th day of October, 1939, I was down to the schoolhouse at noon when school let out and I met Lois Ewin and asked her if she would deliver a package for me for three dollars to which she agreed. I took her down in the City Park and got her down on the ground and had sexual relations with her. I took out my pocket-knife and stuck it into a tree and told her if she fought or resisted, 'I will cut your throat.' After I got through with her I had her go down in the creek and wash herself. I got up and ran and went to my grandmothers, Mrs. Baker, who lived there in Cushing. I changed my shirt and went over to Cochrane Grocery and asked the lady the number of a Taxi. She told me and I called them and hired the taxi to take me to Drumright, Oklahoma. I then on Thursday sold the knife I had with me to a brakeman in Drumright for ten cents and left there and went to Houston, Texas, where I enlisted in the U. S. Army and was stationed at Kelly Field Texas where I was at the time I was placed under arrest for the crime of First Degree Rape."

Six days after the petitioner, Sisson, was first arraigned in the district court, he again appeared before the district court with his two attorneys at which time he expressed a desire to withdraw his plea of not guilty and

enter a plea of guilty. At said time, the district judge questioned the petitioner concerning the commission of the alleged crime and then accepted his plea of guilty and sentenced him to serve a term of life imprisonment in the penitentiary.

The minutes of the county court and of the district court showing the occurrences at the time of the arraignment of the accused in each of said respective courts were also introduced in evidence and they corroborated the testimony of the deputy sheriff that the petitioner was fully informed of all of his rights.

Robert L. Hert, one of the attorneys appointed by the court to represent the petitioner, testified that he and his associate, Mr. Murphy, who is now an instructor in the School of Law at the University of Tennessee, consulted with Noah Sisson and advised him of everything that they thought it was necessary for him to be advised of to prepare for trial, and told him of all of the rights which he had under the law, including the right to be tried to a jury of twelve men; that after consulting with the said Sisson, he expressed a desire to plead guilty and after becoming familiar with all the facts, he and his co-counsel appeared with the said Sisson when he entered his plea of guilty before the district court.

Honorable Henry W. Hoel, district judge of Payne county, testified that he appointed two very able and competent attorneys to advise and consult with Sisson when he was arraigned before the district court upon the charge of rape; that the crime which the petitioner was alleged to have committed was very revolting, and that he appointed the two lawyers to consult with the petitioner so that he would be thoroughly protected in all of his rights; that at the time the plea of petitioner was en-

tered, the court used every precaution to preserve and protect the rights of the defendant, and to be sure that he understood the nature of the offense with which he stood charged, and the punishment which could be meted out upon a plea of guilty.

This court has been receiving many petitions for habeas corpus from inmates of the penitentiary. It should be borne in mind that the writ of habeas corpus may not be used as a substitute for an appeal. Ex parte Wright, 78 Okla. Cr. 157, 145 P. 2d 772. Our function in habeas corpus is not to determine the guilt or innocence of the petitioner of the crime for which he was sentenced, but only to determine whether he is restrained of his liberty by due process of law, and whether the court which rendered judgment imposing the sentence was without jurisdiction. In re Maynard, 79 Okla. Cr. 215, 153 P. 2d 505.

Persons with mental ailments are in the same class as immature children without any knowledge of court proceedings. It has been held that where such individuals are charged with a crime, it is the court's duty, whether requested or not, to appoint counsel to. represent the accused as a necessary requisite of due process of law. In re Cornell, 87 Okla. Cr. 2, 193 P. 2d 904. That was done in the instant case. The district judge swore that there was nothing in the appearance or conduct of the accused at the time of the arraignment to indicate that he did not know right from wrong, but he assigned counsel to advise with the accused for the sole reason that he appeared without counsel, and the charge against him was a capital offense.

The fact that petitioner may not have known right from wrong at the time of the alleged commission of the crime was a defense which he properly could have raised

in the trial of a case, and would have been subject to review by this court upon appeal in case of a conviction.

In Tuggle v. State, 73 Okla. Cr. 208, 119 P. 2d 857, 862, it is said:

"The defendant remembered with clarity, the minutest details of the killings, as shown by his statement. He knew he was doing wrong all of the time he was committing the crimes. We cannot assent to the proposition that a morbid state of affections or passions, or an unsettling of the moral system, where the mental faculties remain in a normal, sound condition excuses actions, otherwise criminal."

This record reflects that the trial court did all that was necessary to have been done to have fully protected the rights of the accused. The nature of the crime charged to the accused and his subsequent history of confinement in the hospital for mental diseases, is strong proof that the petitioner was suffering from a mental ailment at the time he committed the crime. Such a showing, however, is not sufficient to defeat the jurisdiction of the court and require this court to say that the judgment assessed the defendant was void. If the petitioner is now cured of his mental disturbances to where he can conduct himself as a law-abiding citizen, the facts which have been shown in his behalf might appeal to the Pardon and Parole Board in an application for clemency. Those facts, however, are not such as would justify or require this court to release him from the penitentiary on habeas corpus.

The writ is denied.

BRETT and POWELL, JJ., concur.