# MOORE v. STATE.

No. A-11813. Aug. 5, 1953.

(260 P. 2d 410.)

William H. Lewis, Oklahoma City. for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and James P. Garrett, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Charles Junior Moore, was charged by an information filed in the district court of Oklahoma county with the crime of murder of one Delmar Louis Dodson on May 20, 1951; was tried, found guilty of manslaughter in the first degree by verdict of the jury, who left the punishment to be fixed by the court. Thereafter, the defendant was sentenced to serve 15 years in the State Penitentiary, and has appealed.

Four propositions are presented in the brief of defendant: First, the evidence was insufficient to sustain the conviction. Second, the trial court erred in not submitting the issue of manslaughter in the second degree to the jury by proper instruction. Third, the punishment was excessive. Fourth, the judgment and sentence was erroneous.

The first and third propositions will be considered together. The evidence of the state showed that the deceased had purportedly purchased a ring from the defendant for $25, and that the ring was almost valueless. The testimony of Raymond Moore, who was an eyewitness to the fatal shooting, was sufficient to require the court to submit the question of fact as to the guilt of defendant to the jury for their determination. The killing of the deceased by the defendant with a .32 automatic pistol was admitted, but a plea of self-defense and defense of his wife was interposed by the defendant.

Raymond Moore testified that on Sunday evening, the date of the homicide, he had accompanied deceased to church and after church had ended, he and deceased had walked to the corner of Second and Stiles street, where they encountered the defendant and his wife. Moore testified that the deceased asked defendant about some money and defendant stated he had none, deceased said "Yes you have," and the defendant changed his mind and gave the deceased $15. Deceased then asked defendant when he was going to pay the balance and defendant said he didn't know. Defendant then gave his wife a watch to take to one Earnest Butler to try to raise some money, but she returned shortly without any money. The defendant then gave the watch to deceased to hold and said he would go get some money. Defendant was gone for about 15 minutes and returned and said, "Delmar, you will have to hold the watch until tomorrow," but that he would have some money tomorrow. Moore and the deceased then turned to go home, when defendant called to deceased and said, "I want the watch back because it doesn't belong to me." Deceased replied, "No, I will give it back to you tomorrow when you give me my money." Deceased turned to leave but defendant called him back. Then defendant asked for the watch and money and pulled an automatic pistol. Deceased reached into his pocket, got the money which had been given to him and started to hand it to defendant. When he reached out his hand, defendant shot him. Deceased turned to run as did the witness, and as they were running, a shot hit the glass of their car as Moore was trying to get into the car. The deceased ran until he fell dead, near the corner of Fourth and Stiles.

Most of the other state witnesses were police officers who made the investigation and who detailed the facts of their investigation. However, Earnest Butler, the operator of a cafe at 307 N. Stiles, stated that defendant was known as "Little Brother"; that he saw defendant and deceased talking on the corner near his cafe but did not hear their conversation. In a few minutes, defendant's wife came in and asked to borrow $10 on a watch which she had with her, but he refused. Shortly thereafter, he heard defendant's wife say, "Don't do that, Little Brother." He heard a shot, ran to the door of his cafe, saw the deceased was running and the defendant was still shooting.

The defendant testified in his own behalf and used other witnesses to bolster his theory of self-defense. Such, however, merely raised issues to be determined by the jury.

By statute it is provided:

"Upon a trial for murder, the commission of the homicide by the defendant being proven, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable." 22 O.S. 1951 § 745.

In Hovis v. State, 83 Okla. Cr. 299, 176 P. 2d 833, and Chambless v. State, 90 Okla. Cr. 423, 214 P. 2d 947, the above statute was cited and this court held that where the killing of deceased is admitted and the proof of the state did not show that defendant was justified in taking the life of the deceased, an issue of fact is raised for determination by the jury.

In connection with the defendant's contention that the court erred in failing to submit the issue of manslaughter in the second degree to the jury by proper instruction, it is significant that counsel for defendant did not request such instruction.

It is established law that where counsel for the accused are of the opinion that additional instructions should be given to the jury, it is their duty to reduce them to writing, submit them to the trial judge and request that they be given. Adams v. State, 62 Okla. Cr. 167, 70 P. 2d 821, 822.

Not only did counsel for defendant fail to request that such instruction be given, but the record would not have sustained the giving of such instruction. The case of Gray v. State, 97 Okla. Cr. 121, 258 P. 2d 950, presented facts which were similar to the instant case. It was therein stated:

"It is next contended that the court erred in the refusal to give a requested instruction on manslaughter in the second degree. We do not find that the evidence in any way involves the elements of manslaughter in the second degree. Tit. 21 O.S. 1951 § 716. If the jury had believed the witness Yarsant they would have been justified in finding the defendant guilty of murder under Tit. 21 O.S. 1951, § 701(1). The jury found the defendant guilty of manslaughter in the first degree, apparently under Section 711(2) of Title 21 O.S. 1951, the homicide being brought about without a design to effect death, but by means of a dangerous weapon. See Koozer v. State, 7 Okla. Cr. 336, 123 P. 554, for an excellant treatise on the distinction between murder and manslaughter.

"Defendant's theory was that of self-defense. He did not claim the existence of any state of facts indicating negligence, accident, or any other element which could have reduced the crime to manslaughter in the second degree, and for such reason the court did not err in refusing to give the requested instruction covering manslaughter in the second degree."

Manslaughter in the second degree under Oklahoma law, 21 O.S. 1951 § 716, contemplates the killing of one human being by the act, procurement, or culpable negligence of another, which is not murder, nor manslaughter in the first degree, nor excusable nor justifiable homicide. In this case, there is no evidence which tends to show that the homicide was manslaughter in the second degree.

Lastly, it is contended that the judgment and sentence erroneously recited that the defendant was convicted of murder. We have examined the judgment and sentence and it does erroneously recite that defendant be imprisoned in the penitentiary for a period of 15 years for the crime of murder. The jury found the defendant guilty of manslaughter in the first degree and left the punishment to be fixed by the court. The court sentenced the defendant to 15 years imprisonment in the penitentiary, which was in conformity to the verdict of the jury, as a conviction for murder carries either a sentence of life imprisonment or death while the punishment for manslaughter in the first degree

190

may be any sentence in the penitentiary not less than four years. 21 O.S. 1951 § 715. In the case of Titus v. State, 66 Okla. Cr. 1, 89 P. 2d 375, this court held:

"Where a verdict of a jury assessing the punishment is in conformity with the law, the court must enter judgment and sentence in conformity to the verdict. Where there is a variance between the verdict of the jury and the judgment of the court, on appeal this court will remand the cause with direction to the trial court to render judgment and sentence in conformity to the verdict."

It is therefore ordered that the district court of Oklahoma county be directed to correct its judgment and sentence to conform to the verdict of the jury, so as to recite that the sentence was for manslaughter in the first degree, and the clerk of said district court is directed to issue to the sheriff of Oklahoma county a commitment in accordance with the judgment of the court as entered in conformity to the verdict of the jury. The judgment and sentence as thus corrected is affirmed.

POWELL, P. J., and BRETT, J., concur.