Jesse MITTS, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12752.

Court of Criminal Appeals of Oklahoma.

Sept. 16, 1959.

Rehearing Denied Oct. 28, 1959.

Dickey & Richard & Dennis Bushyhead, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

This is an appeal by Jesse. Mitts from an order of the District Court of Tulsa County, Oklahoma, overruling the defendant's motions in arrest of judgment and for a new trial from a verdict of a jury imposing the death penalty for the crime of murder.

There are two phases to this case, the original trial proceeding, and this special proceeding and for a proper understanding thereof a background delineation is essential. The original trial proceeding was appealed to this Court. Mitts v. State, 82 Okl. Cr. 367, 170 P.2d 563. Therein the defendant was tried and convicted of the murder of one Ray·Martin by shooting him with a pistol. The record discloses the killing arose as the outgrowth of the defendant's attentions to the deceased's wife and daughter. It appears that Martin told Mitts to stay away from them. Mitts testified Martin said he would kill him if he did not. Thereafter, the defendant became fearful, bought a pistol, went to the deceased's home on Christmas Eve, in the nighttime, and waylaid him from outside his window just after Martin had lain down on the bed and was engaged in reading his evening paper. The defendant fired the shot into the decedent's head from a distance of three and one-half feet, killing him. Defense counsel in his brief, commenting on the facts, observed: "The state's proof tended to show a deliberate, premeditated killing." The defendant said he became "pretty screwed up" about Martin's threat. He related he killed Martin "because he was going to kill me." He believed that it was not wrong when "it would be either your life or his

life." That this was a premeditated killing is clearly apparent. The defendant returned to his home after the killing and hid the gun under a board in a chicken house. He later confessed and took the officers to the place where the gun was hidden.

In the trial on the merits, the defendant testified he had an honorable medical discharge from the army received during World War II growing out of being hit in the head by a falling airplane. As a result thereof, he was in several government hospitals thereafter. He further testified he did not know what his disability was, only that he had a silver plate in his head and that he was drawing government compensation therefor. No other proof was offered by the defendant on the question of his disability, except on cross-examination he testified he did not think he was insane. Counsel for the defense on the merits in his brief on appeal said: "It is to be remembered that the defense of insanity was not raised at the trial." This is true, both as to insanity at the time of the commission of the crime and present insanity at the time of or during the trial. Counsel for the defendant apparently did not believe his client was insane at either time. He offered the defendant's testimony of the injury and hospitalization as a psychological device, with no further proof thereon. Apparently, neither the trial counsel nor trial court had any doubt as to the defendant's sanity at the time of the trial on the merits or the question would have been raised. The jury returned its verdict of guilty of murder and fixed the punishment at death in the electric chair. Motion for new trial was filed and overruled. No mention of insanity at the time of the crime was made in any way in the motion for new trial. Thereafter, the matter came on for hearing on a motion in arrest of judgment on the ground the defendant was presently insane.

A jury was impaneled to try that issue, but before the matter could be concluded, the judge presiding over that matter, being unimpressed with the evidence, took the

case from the jury and proceeded to pronounce judgment and sentence of death in the electric chair in accordance with the jury's verdict. In this he committed error, for a discussion of which see Mitts v. State, supra. Thereafter, defendant was admitted to the state penitentiary for execution.

While defendant was confined in the penitentiary, the Warden became concerned of his present sanity. Proceedings were instituted in the District Court of Pittsburg County by the county attorney thereof to determine the defendant's then condition. 22 O.S.1951 §§ 1161–1169. The defendant was examined by Dr. F. M. Adams of the State Health Department and on his and other testimony, the jury, on October 17, 1945, found Mitts to be presently insane. He was thereupon committed to the state hospital at Vinita, Oklahoma. This proceeding superseded the aborted present sanity trial in Tulsa County and met the requirements of the law.

Thereafter, on June 26, 1946, the appeal in Mitts v. State, 82 Okl.Cr. 367, 170 P.2d 563, supra, on the merits was determined and an order issued, the gist of which was that the judgment and sentence of the District Court of Tulsa County be set aside and the matter of imposition of judgment and sentence be postponed until the defendant recovered his sanity, at which time he was to be returned to the District Court of Tulsa County to await its order. Under the order of the District Court of Pittsburg County, the defendant continued in custody of the state hospital for more than twelve years.

On November 20, 1958, the Medical Superintendent, Dr. P. L. Hays, notified Presiding Judge W. Lee Johnson of the District Court of Tulsa County that for the past several years the medical staff had felt that the defendant, Mitts, had recovered and was then responsible for his acts, and should be returned to the court for further action. The court ordered that the defendant be returned to Tulsa County for pronouncement of judgment and sentence. It being discovered that the formality of vacating the original judgment and sentence had not been performed, the same was thereupon accordingly done.

At no time subsequent to the time of the certification by the hospital of the defendant's sanity has his sanity been questioned by himself or counsel. Mr. Dickey was expressly asked: "Do you intend by your motion in arrest of judgment that the defendant is now insane?" The answer by Mr. Dickey was, "No, sir." So, the question of present insanity was not raised following the certification of sanity.

In accordance with this Court's order, the judgment and sentence was reentered on January 20, 1959, and from that proceeding the defendant appeals seeking relief therefrom and a new trial in the case on its merits.

The defendant contends that the trial court on the merits was without jurisdiction to try the defendant, he being insane at the time of and throughout the trial. He also asserts insanity at the time of the killing. The question of either insanity at the time of the trial on the merits or insanity at the time of the killing was not raised as a defense prior to rendition of the verdict. Mr. Frank Hickman, now deceased, counsel of the defendant's own choice, was among the state's ablest attorneys, especially in the field of criminal law. It is of great force that neither he nor the trial judge sought to raise the issue of present sanity before rendition of the jury's verdict. Apparently, they were not impressed to the point of expressing a doubt of the defendant's present sanity as to prevent him from making a rational defense. The question of the defendant's ability to make a rational defense at the trial cannot now be asserted. It must have been raised either before or during the trial before the rendition of the verdict. Under the provisions of 22 O.S.1951 §§ 1161, 1162, and Maas v. Phillips, 10 Okl. 302, 61 P. 1057; Tuggle v. State, 73 Okl.Cr. 208, 119 P.2d 857; Ex parte Gilbert, 71 Okl.Cr. 268, 111 P.2d 205; Ex parte Sisson, 90 Okl. Cr. 47, 210 P.2d 185, the question of present sanity not having been raised before trial or

during the trial proceedings and prior to rendition of the verdict, it may not be raised at this time. The question of insanity at the time of the killing being an affirmative defense, it must have been interposed during the trial. It is too late to assert it now. Grayson v. State, 85 Okl.Cr. 266, 188 P.2d 696; Ex parte Sisson, supra.

▪ The matter of insanity at the time of the killing has been conclusively foreclosed to this defendant. In People v. Geary, 298 Ill. 236, 131 N.E. 652, the rule applicable herein was clearly stated:

"The sanity of an accused at the time he committed the offense is conclusively determined by the judgment of conviction, and cannot be again raised in a proceeding to have determined the question of his sanity before execution of capital sentence on him, in which case the only questions for trial were whether the defendant had become insane or a lunatic since the entry of the original judgment and whether he is a lunatic or insane at the time of impaneling the jury in that proceeding."

If the defendant could now assert insanity at the time of the killing in face of this record, the law would result in interminable confusion. Under the foregoing rule, the sanity of the defendant, as far as the merits of the case are concerned, was conclusively determined by the jury's verdict. Insanity is not a defense that can be reserved for a more propitious time. It must be timely made.

The matter now sought to be raised as to insanity at the time of the killing not raised in the trial or in the first appeal, Mitts v. State, supra, is not now within our authority to consider. The sole question raised in Mitts v. State, supra, was as to the propriety of pronouncement of judgment and sentence under the conditions then prevailing. All obstacles to execution of the jury's verdict having later been removed, it was proper that the defendant be again brought before the court for pronouncement of judgment and sentence. There was nothing irregular in that procedure. This Court has

in many instances held that a case may be remanded for the purpose of entering a proper judgment and sentence where no other error appears prior, up to, and including the verdict. Moore v. State, 97 Okl.Cr. 187, 260 P.2d 410; Young v. State, 95 Okl. Cr. 82, 239 P.2d 1042; Bush v. State, 93 Okl. Cr. 188, 226 P.2d 445; White v. State, 76 Okl.Cr. 147, 134 P.2d 1039; Russell v. State, 43 Okl.Cr. 455, 279 P. 929; White v. State, 42 Okl.Cr. 50, 275 P. 1067. This power has been very commonly exercised by the courts of other states. Commonwealth v. Schultz, 170 Pa.Super. 504, 87 A.2d 69; State v. Ausberry, 83 Ohio App. 514, 82 N.E.2d 751; Burgess v. State, 256 Ala. 5, 53 So.2d 568; State v. Doughtie, 237 N.C. 368, 74 S.E.2d 922; Harris v. State, Miss., 46 So.2d 923.

▪ In the proceeding questioned herein the trial court seeks only to carry out the mandate in Mitts v. State, supra, which, according to law, it was bound to do under the hospital certification of Mitts' recovery of sanity. Support for this procedure is found in 22 O.S.1951 § 1008 and is not violative of due process. Ex parte Phyle, 30 Cal.2d 838, 186 P.2d 134, certiorari dismissed Phyle v. Duffy, 334 U.S. 431, 68 S.Ct. 1131, 92 L.Ed. 1494, rehearing denied 334 U.S. 862, 68 S.Ct. 1526, 92 L.Ed. 1782. There is nothing irregular in this proceeding.

▪ The defendant next asserts that the trial court lost jurisdiction for failure to enter an order vacating and setting aside the original judgment and sentence until more than twelve years or twenty four terms of court after the order of this Court so to do. He says on this ground he is entitled to his immediate release. He cites cases in support of this contention, all of which are not in point. The reason is obvious. Those cases involved delay in appeals, the possibility of the death and dislocation of witnesses incident to the delay of a new trial, and the court's failure to properly enter judgment and sentence, which resulted in great prejudice to those defendants. There, error plus injury prevailed. No such conditions confront us in

this case. Here, conceding the matter should have been immediately disposed of in keeping with good practise, there was no injury to the defendant. Moreover, the act, in face of this Court's order and its effect concerning the judgment, was merely ministerial and not material to the defendant. This failure of the trial court resulted in no prejudice to the defendant. Furthermore, the matter of imposing judgment and sentence was awaiting the occurrence of a contingency which the vacation of the old judgment and sentence could in no way affect. It was material only to complete the record. Where no substantial right has intervened or will be affected, a trial court always acts within its judicial powers in perfecting its records, even though after long delay. Such is the case herein.

▌ Next, the accused complains that he has been held in the State Hospital several years after it was discovered he had regained his sanity and he has thus been prejudiced and is entitled to his release. This being true and within his knowledge and not within the knowledge of the court, it was his duty to demand to be released. The record shows the trial court acted with dispatch when the matter was called to its attention. But, granting that the hospital authorities erred in not calling the matter of the defendant's sanity to the trial court's attention, this too was error without prejudice. In fact, under the circumstances it was in the nature of a gratuitous reprieve from execution of the death penalty, of which the accused did not complain until this proceeding was instituted. The reason he did not object sooner was because of its beneficial nature.

▌ It is further contended that the evidence as to insanity at the time of the killing was newly discovered and therefore the trial court erred in not hearing the same. This is without merit since the basis of the present claim of insanity at the time of the killing was readily available at the trial to have been vigorously urged, but to which only casual reference was made. What the reason was is not for our speculation. In

any event, a total lack of due diligence appears in the matter and constitutes a bar to reopening the case on that ground. Where evidence is urged by defendant on motion for new trial on the ground the same is newly discovered, it must be established that the same, if existing at the time of trial, could not have been procured before trial by the exercise of due diligence, and failure to do so constitutes a bar to a new trial on such ground. 22 O.S.1951 § 952; Armstrong v. State, 61 Okl.Cr. 352, 68 P.2d 114; Henderson v. State, 94 Okl.Cr. 45, 230 P.2d 495, 23 A.L.R.2d 1292, certiorari denied 342 U.S. 898, 72 S.Ct. 234, 96 L.Ed. 673. Such is clearly not the situation in this case. Under this rule, the defendant is precluded from taking advantage of the evidence he did not use and which the record shows was available to him at the trial on the merits. To approve the defendant's contention now asserted would open up a new artifice in criminal defense by which a defendant could play fast and loose with the courts.

▌ This present proceeding, so far as the trial on the merits is concerned, is an attack on the trial court's jurisdiction. It fails for the reason that neither present sanity at the time of the trial nor insanity at the time of the killing were raised. Ex parte Gilbert, supra; Ex parte Sisson, supra; Ex parte Yandell, 54 Okl.Cr. 357, 22 P.2d 114. There was nothing lacking in the trial proceeding to defeat the court's jurisdiction before rendition of the verdict. It had jurisdiction of the person, of the subject matter, and authority to receive the verdict of the jury.

▌ Under the unusual circumstances of this case, the jury's findings on the facts are conclusive and the principles of law supporting this conviction and the judgment and sentence of January 20, 1959, are well established. Nevertheless, looking at this record as a whole, and only because of the peculiar circumstances involved, we are of the opinion that justice requires the judgment and sentence imposed should be and is hereby modified by a reduction of the penalty to ninety nine years imprisonment. 22

O.S.1951 § 1066. As modified, the judgment and sentence is affirmed.

POWELL, P. J., and NIX, J., concur.

POWELL, Presiding Judge (concurring).

The evidence at trial was conclusive of the fact that the murder was premeditated. The record indicates the possibility of mental derangement at the time of the murder, but no such plea was made. Such failure at trial precludes a new trial for such purpose, unless there would be other grounds so entitling. People v. Geary, 298 Ill. 236, 131 N.E. 652. The judges of this Court take an oath to uphold the laws of this State. That means that we must do so whether we like a particular law or not. Here, for example, it matters not whether we are for or against capital punishment. So, I find myself, after a study of Judge Brett's opinion, having some doubt as to whether the record justifies a modification of the punishment imposed. But, by reason of the matters recited in the opinion, I resolve that doubt in favor of the defendant, and concur in the modification.